2013 COA 171

The PEOPLE of the State of Colorado,
Petitioner-Appellee,

IN the INTEREST OF J.G.C., a Child,

and

Concerning J.C.H., Respondent-Appellant.

Court of Appeals No. 13CA0847

Colorado Court of Appeals,
Div. IV.

Announced December 5, 2013

Alan W. Samber, County Attorney, Tomi L. Hanson, Assistant County Attorney, Sterling, Colorado, for Petitioner-Appellee

Barry Meinster, Guardian Ad Litem

Matuszczak Law Firm, LLC, Tricia A. Matuszczak, Sterling, Colorado, for Respondent-Appellant

Opinion by JUDGE WEBB

¶ 1 In this dependency and neglect proceeding, J.C.H. (presumptive father) appeals the order dismissing him from the dependency and neglect proceeding concerning J.G.C. (the child). Presumptive father contends the Logan County Department of Social Services (LCDSS) lacked standing to seek his dismissal from the petition, and the district court erred in dismissing him from the petition based on genetic test results showing that he was not the child's biological father. We conclude that in the circumstances present here, the district court lacked subject matter jurisdiction to make a paternity determination. Therefore, we need not consider standing, and we vacate the order. Because supplemental briefing shows that the circumstances which deprived the court of subject matter jurisdiction no longer exist, and because the testing issue may arise on remand, we also consider presumptive father's remaining contention. We conclude that the district court erred in finding evidence he was not the biological father sufficient to rebut the presumption of paternity arising out of his identification as the father on the child's birth certificate.

## I. Background

¶ 2 LCDSS filed a petition in dependency and neglect and a motion seeking temporary custody of the child, who had been born eight days earlier. LCDSS identified presumptive father as the child's father, but alleged that he might not be the child's biological father. Shortly thereafter, LCDSS filed a family services plan that included proposed treatment plans for both presumptive father and mother. In approving the plan, the court noted the allegation that presumptive father might not be the child's biological father, and ordered LCDSS to arrange for paternity tests.

¶ 3 LCDSS submitted test results showing that the probability of presumptive father's paternity was zero, and on this basis urged the court to dismiss presumptive father from the case. The court declined to do so, noting that "[h]e could be the presumptive father since his name is on the birth certificate and ... the biological father is unknown." However, the court offered to consider written motions to name presumptive father as a special respondent or to dismiss him from the petition.

¶ 4 LCDSS then moved to dismiss presumptive father from the petition, arguing that under section 19–4–105, C.R.S.2013, the test results established that he was not the biological father, and thus, clearly and convincingly rebutted the presumption created by his name being on the birth certificate.

In response, presumptive father acknowledged that he was not the child's biological father.

¶ 5 However, he argued that under section 19–4–105(2), C.R.S.2013, a court may determine the legal father of a child only when two or more men assert that they are a child's father based on competing statutory presumptions. Because no other man was then asserting parentage based on any presumption, presumptive father contended that section 19–4–105(2) was not triggered. He also argued that LCDSS did not have standing to assert the rights of the alleged biological father, who was not then a party.

¶ 6 The district court dismissed presumptive father from the case, holding that "he cannot be the presumptive father because the paternity test results rebut any presumption by clear and convincing evidence."

## II. Jurisdiction to Determine Paternity

¶ 7 Although none of the parties challenged the district court's jurisdiction to determine the nonpaternity of presumptive father, we may consider the issue on our own motion. *In re Support of E.K.*, 2013 COA 99, ¶ 7, —— P.3d ——. We requested supplemental briefing on this issue and now conclude that the district court lacked subject matter jurisdiction to make a paternity determination.

¶ 8 Determining a child's paternity (or, more rarely, maternity) in Colorado is subject to Colorado's version of the Uniform Parentage Act (the UPA), sections 19–4–101 to –130, C.R.S.2013.

¶ 9 Except as otherwise provided by law, the juvenile court has exclusive original jurisdiction in both dependency and neglect proceedings and proceedings to determine the parentage of a child.[1] §§ 19–1–104(1)(b) and (f), C.R.S.2013. However, a paternity proceeding "may be joined with an action in another court of competent jurisdiction for dissolution of marriage, legal separation, declaration of invalidity of marriage, or support." § 19–4–109(1), C.R.S.2013; *E.K.* (child

support); *In re Parental Responsibilities Concerning G.E.R.*, 264 P.3d 637 (Colo.App. 2011) (allocation of parental responsibilities); *In re Marriage of Burkey*, 689 P.2d 726 (Colo.App.1984) (dissolution of marriage). Thus, section 19–4–109(1) provides an alternate forum for the resolution of paternity disputes. *In re Marriage of De La Cruz*, 791 P.2d 1254, 1256 (Colo.App.1990) (holding that the district court, which had exclusive jurisdiction in dissolution of marriage, had the authority to determine the issue of parentage once it was raised by the presumed father).

¶ 10 In construing a statute, a court strives to give effect to the intent of the legislature and adopt the construction that best carries out the provisions and purposes of the act; the court will not construe it in such a manner as to lead to an absurd or unreasonable result. *Huber v. Colo. Mining Ass'n*, 264 P.3d 884, 889 (Colo.2011). Here, a reasonable interpretation of section 19–4–109(1) is that the legislature intended to extend the jurisdiction of the district court—in a case in which it is not functioning as a juvenile court and thus, otherwise would not have jurisdiction to determine parentage—to include paternity issues that arise in nonpaternity cases. Nothing in the language of section 19–4–109(1) suggests that by omitting to specifically authorize the juvenile court to allow a paternity action to be joined with another proceeding within the jurisdiction of the juvenile court, such as a dependency and neglect action, the legislature intended to deprive the juvenile court of the authority to do so. Such an interpretation would lead to an absurd and unreasonable result in that it would allow district courts to resolve paternity issues in an efficient manner while forbidding the same flexibility to juvenile courts. Therefore, we conclude that a paternity action may be joined with a dependency and neglect proceeding.

¶ 11 When a paternity issue arises in a nonpaternity proceeding, the court must follow the procedures outlined in the UPA. Failure to do so deprives the court of subject

---

1. Under Colorado law, "juvenile court" means the juvenile court of the city and county of Denver or the juvenile division of the district court outside of the city and county of Denver. § 19–1–103(70), C.R.S.2013.

matter jurisdiction to decide paternity. *E.K.,* ¶ 9; *Burkey,* 689 P.2d at 727–28.

¶ 12 The UPA provides that before paternity can be determined, each man presumed to be the father of the child under section 19–4–105, and each man alleged to be the natural father must be made a party to the paternity action, or, if not subject to the personal jurisdiction of the court, must be given notice of the action and an opportunity to be heard. § 19–4–110, C.R.S.2013. Citing section 19–4–110, the division in *E.K.,* ¶¶ 10–12, held that failure to join or give notice to all presumed fathers and any alleged natural father of the child deprived the court of subject matter jurisdiction to determine paternity.

■ ¶ 13 Here, an alleged father, P.C., had been identified based on mother's statement that he might be the child's biological father. If P.C. was subject to the court's jurisdiction when LCDSS raised the issue of paternity by moving to have presumptive father dismissed from the petition, his joinder for the purpose of determining paternity was required by section 19–4–110.[2] And if he was not subject to the court's jurisdiction, notice of the proceeding was required. Because the record does not show that P.C. was given legal notice that a paternity determination had been sought, and he was made a party to the proceeding only after presumptive father's dismissal, we conclude that the district court lacked subject matter jurisdiction to decide the issue of paternity. Thus, the order dismissing presumptive father from the petition on the ground of nonpaternity is void.

¶ 14 Accordingly, we vacate the dismissal order and remand this case to the district court for further proceedings.

2. The parties were asked to address in supplemental briefing whether P.C. was subject to the jurisdiction of the district court and whether he had notice that LCDSS had moved to have presumptive father J.C.H. dismissed from the petition. LCDSS confirmed that he did not receive a copy of the motion "because he was not a party to the case at that time." The parties do not dispute that P.C. was subject to the jurisdiction of the court when father was dismissed, and

## III.  Standing

¶ 15 Presumptive father contends the trial court erred in allowing LCDSS to assert the unknown biological father's parental rights on his behalf. We construe this as a contention that LCDSS lacked standing to seek presumptive father's dismissal from the petition so that the child's biological father could take his place. Because the parties' supplemental briefs agree that biological father P.C. has relinquished his parental rights and the record does not show that any other presumptive or alleged father has been identified, we conclude that LCDSS's standing to assert another presumptive father's rights is unlikely to arise on remand. Accordingly, we will not address it.

## IV.  Dismissal of Presumptive Father

¶ 16 Presumptive father also contends the trial court erred in dismissing him from the petition based on the genetic test results. Because on remand LCDSS may again seek to have the court declare the nonexistence of a father and child relationship between presumptive father and J.G.C., we will address this issue. We agree that the court erred.

### A.  Legal Framework

#### 1.  Parents and Parental Rights Under the Children's Code

■ ¶ 17 Parents have a fundamental liberty interest in the care, custody, and management of their children. *See People in Interest of A.M.D.,* 648 P.2d 625, 632 (Colo. 1982). This interest " 'does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State.' " *Id.* (quoting *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

thus, could have been made a party to the proceeding prior to the paternity determination. His addition to the petition shortly after presumptive father's dismissal (and after his own paternity test established that it was highly likely that he was the biological father of the child) strongly suggests that he was subject to the court's jurisdiction when the court was asked to address the issue of paternity.

¶ 18 Consistent with these principles, the Colorado Children's Code is designed "[t]o preserve and strengthen family ties whenever possible," and "[t]o remove a child from the custody of his parents only when his welfare and safety or the protection of the public would otherwise be endangered and, in either instance, for the courts to proceed with all possible speed to a legal determination that will serve the best interests of the child." §§ 19–1–102(1)(b), (c), C.R.S.2013.

¶ 19 Under the Children's Code, a "parent" is "either a natural parent of a child, as may be established pursuant to [the UPA], or a parent by adoption." § 19–1–103(82)(a), C.R.S.2013.

### 2. The Uniform Parentage Act

¶ 20 Under the UPA, a presumption of fatherhood may arise from several sets of circumstances. As relevant here, such a presumption may arise if:

- A man acknowledges his paternity of the child in a writing filed with the court or registrar of vital statistics, as provided in section 19–4–105(1)(e), C.R.S.2013; or

- Genetic or other tests of inherited characteristics have been administered as provided in section 13–25–126, C.R.S.2013, and the results show that the alleged father is not excluded as the probable father and that the probability of his parentage is ninety-seven percent or higher, as provided in section 19–4–105(1)(f), C.R.S.2013.

¶ 21 A presumption of paternity arising under the UPA can be rebutted by clear and convincing evidence. § 19–4–105(2)(a), C.R.S.2013. None of the presumptions is conclusive, including the presumption based on biology. *N.A.H. v. S.L.S.*, 9 P.3d 354, 361–62 (Colo.2000).

¶ 22 If two or more conflicting presumptions arise, and none has been overcome by clear and convincing evidence, the presumption that is founded on the weightier considerations of policy and logic controls. In determining which of the conflicting presumptions controls, the court must consider "all pertinent factors" including those listed in section 19–4–105(2)(a)(I)–(VIII), C.R.S. 2013. The inquiry is fact-intensive, but the court must focus on the best interests of the child and determine paternity with that standard at the forefront. *N.A.H.*, 9 P.3d at 362, 365.

### B. Application

¶ 23 Here, presumptive father never claimed to be the child's biological father. Rather, his claim to be the child's legal father was based on his acknowledgement of paternity "in a writing filed with the court or registrar of vital statistics"—here, the child's birth certificate—as provided by section 19–4–105(1)(e). Presumptive father's acknowledgement that he was not the biological father did not rebut the presumption arising out of his identification as the child's father on the child's birth certificate. *In re Parental Responsibilities of A.D.*, 240 P.3d 488, 491 (Colo.App.2010). Thus, he was presumed to be the natural father of J.G.C. when LCDSS moved to have him dismissed from the petition, and when the court granted the motion. *See* § 19–4–105(1)(e). Because no evidence rebutted this presumption, the court erred in dismissing him from the petition in dependency and neglect.

### V. Conclusion

¶ 24 The order dismissing presumptive father from the petition is vacated. If, on remand, presumptive father's claim to be the legal father of the child is challenged, the district court shall conduct further proceedings under the UPA as needed to determine the child's legal father. *See People in Interest of C.L.S.*, 313 P.3d 662, 664–74, 2011 WL 5865898 (Colo.App. No. 10CA1980, Nov. 23, 2011) (describing process for resolving competing presumptions of paternity).

JUDGE BERNARD and JUDGE DUNN concur.