Opinion by JUDGE FURMAN
¶ 1 In this dependency and neglect case, mother's boyfriend, N.S., challenges the jurisdiction of the juvenile court to adjudicate paternity with regard to mother's child, N.S. Because we conclude that the juvenile court has jurisdiction to enter a judgment of paternity in a dependency and neglect case, we affirm.
I. The Dependency and Neglect Proceedings
¶ 2 The El Paso County Department of Human Services (the Department) became involved in this case after it received a report that the child had tested positive for THC at birth and that there had been an altercation between the child's mother and her boyfriend. According to the report, mother threw the child at boyfriend, and, after he took the child, mother went to his home and threatened to kill his whole family. Shortly thereafter, mother and boyfriend set up a meeting for the child to visit mother, who then decided that she would not give the child back. Consequently, boyfriend contacted law enforcement officials.
¶ 3 The Department filed a dependency and neglect petition. The petition listed boyfriend as the respondent-father. The child *174 was placed with him while the Department exercised protective supervision.
¶ 4 At a pretrial conference, the juvenile court found that boyfriend had been alleged to be the child's biological father but had not been adjudicated the child's legal father. So the court ordered genetic paternity testing.
¶ 5 Boyfriend admitted to the dependency and neglect petition's allegation that the child was homeless, without proper care, or not domiciled with a parent, guardian, or legal custodian through no fault of the child's parent, guardian, or legal custodian. Based on his admission, the juvenile court adjudicated the child dependent and neglected. In mother's case, the court deferred the child's adjudication.
¶ 6 The Department subsequently amended the dependency and neglect petition to list "unknown father" and another man, A.C., as respondent-fathers. A.C. was served with this petition. Through genetic paternity testing, it was confirmed that A.C. was the child's biological father.
¶ 7 At a paternity hearing, the juvenile court considered competing presumptions of paternity. On the one hand, pursuant to section 19-4-105(1)(d), C.R.S. 2016, boyfriend was presumed to be the father because he had received the child into his home and openly held out the child to be his natural child. On the other hand, pursuant to section 19-4-105(1)(f), A.C. was presumed to be the father because genetic test results had shown that he was not excluded as the probable father and that the probability of his parentage was ninety-seven percent or higher.
¶ 8 On December 31, 2015, the juvenile court resolved the competing presumptions of paternity and entered judgment adjudicating A.C. as the child's legal father.
¶ 9 On February 16, 2016, boyfriend filed a notice of appeal, challenging the juvenile court's judgment of paternity.
¶ 10 Although the judgment of paternity constituted a final judgment with respect to boyfriend, see D.H. v. People , 192 Colo. 542, 544, 561 P.2d 5, 6 (1977) (defining a final judgment as "one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding"), this court issued an order in which it directed boyfriend to show cause why his appeal should not be dismissed. It noted that a notice of appeal from the judgment of paternity may have been due on or before January 21, 2016. See C.A.R. 3.4(b)(1) (providing that a notice of appeal must be filed within twenty-one days after the entry of the judgment, decree, or order).
¶ 11 Boyfriend responded that C.A.R. 3.4 did not govern an appeal from a judgment of paternity, and thus, the expedited twenty-one-day time period to file a notice of appeal did not apply to his case. Instead, he asserted that C.A.R. 4(a) governed his appeal. Because C.A.R. 4(a) provides that a party must file a notice of appeal "within 49 days of the date of the entry of the judgment, decree, or order from which the party appeals," boyfriend asserted that his notice of appeal was timely.
¶ 12 In response, a motions division of this court ordered the parties to brief two issues: (1) whether the notice of appeal was due within twenty-one days of the date of the final, appealable order under C.A.R. 3.4 ; and (2) whether the juvenile court had jurisdiction to issue the judgment of paternity in a dependency and neglect proceeding.
¶ 13 We first address the notice of appeal issue.
II. Notice of Appeal
¶ 14 We conclude that boyfriend's notice of appeal was timely because C.A.R. 4(a) applies to his appeal.
¶ 15 The interpretation of a rule is a question of law that is reviewed de novo. People v. Zhuk , 239 P.3d 437, 438 (Colo. 2010). And, "[w]e interpret rules of procedure consistent with principals [sic] of statutory construction." Id. at 438-39 (quoting People v. Shell , 148 P.3d 162, 178 (Colo. 2006) ). In so doing, we afford a rule's language its "commonly understood and accepted meaning." Id. at 439 (quoting Leaffer v. Zarlengo , 44 P.3d 1072, 1078 (Colo. 2002) ).
*175 ¶ 16 C.A.R. 3.4(a), C.R.S., 2015, as it existed when boyfriend filed his appeal, applied to "[a]ppeals from orders in dependency or neglect proceedings, as permitted by section 19-1-109(2)(b) and (c), C.R.S., and including final orders of permanent legal custody entered pursuant to section 19-3-702, C.R.S....."
¶ 17 Section 19-1-109(2)(b) and (c) provides that appeals in dependency and neglect cases may be taken from orders terminating or refusing to terminate parental rights and from dispositional orders. Thus, the plain language of C.A.R. 3.4 shows that the rule does not apply to paternity actions.
¶ 18 In contrast, C.A.R. 4 does not list specific orders that are appealable. In the absence of any limiting language, we conclude that a judgment of paternity is subject to C.A.R. 4. Because C.A.R. 4(a) includes only a forty-nine-day limit, and boyfriend filed his notice of appeal within this time period, his appeal was timely, and we will consider it.
III. The Juvenile Court's Jurisdiction
¶ 19 We conclude that the juvenile court had subject matter jurisdiction to issue a judgment of paternity in the dependency and neglect proceeding.
¶ 20 The juvenile court has exclusive original jurisdiction in both dependency and neglect proceedings and proceedings to determine the parentage of a child. § 19-1-104(1)(b), (f), C.R.S. 2016.
¶ 21 But, when a paternity issue arises in a dependency and neglect proceeding, the juvenile court must follow the procedures outlined in Colorado's version of the Uniform Parentage Act (UPA), sections 19 -4-101 to - 130, C.R.S. 2016. People in Interest of J.G.C. , 2013 COA 171, ¶ 11, 318 P.3d 576. The UPA requires that the parties be served with a petition and summons and a notice that must address genetic testing and a temporary injunction. § 19-4-105.5, C.R.S. 2016.
¶ 22 The UPA also provides that before paternity can be determined, each man presumed to be the child's father under section 19-4-105 must be made a party to the proceeding or, if not subject to the personal jurisdiction of the juvenile court, must be given notice of the action and an opportunity to be heard. § 19-4-110, C.R.S. 2016; In re Support of E.K. , 2013 COA 99, ¶ 12, 410 P.3d 480 ; J.G.C. , ¶¶ 11-12.
¶ 23 Initially, we note that procedural defects do not deprive the juvenile court of jurisdiction, as boyfriend contends. Even so, boyfriend contends that the juvenile court did not comply with the UPA because he did not receive a summons and petition describing his right to establish paternity. We disagree because boyfriend:
• was served with a summons and a petition in the dependency and neglect action;
• was provided counsel who represented him in the trial court, including at the hearing on paternity;
• had actual notice that there were competing presumptions of paternity and that the juvenile court would determine paternity, see R. McG. v. J.W. , 200 Colo. 345, 349, 615 P.2d 666, 669 (1980) (purpose of the UPA is to establish the parent-child relationship); and
• participated in genetic testing arranged by the Department.
¶ 24 And, boyfriend did not object to the juvenile court's determining paternity based on a failure to comply with section 19-4-105.5. Nor did he assert in the juvenile court or on appeal that he was prejudiced and suffered harm by such a failure. Thus, even if the juvenile court did not comply with certain aspects of the UPA, we conclude that any error was harmless. See C.A.R. 35(c) ("The appellate court may disregard any error or defect not affecting the substantial rights of the parties.").
¶ 25 We also note that under these circumstances, where the presumptive fathers (boyfriend and biological father) were both parties to the dependency and neglect action, had actual notice that a legal finding of paternity was necessary, and did not object to the juvenile court deciding such matters, requiring strict compliance with section 19-4-105.5"would improperly elevate form over *176 substance." Trans Shuttle, Inc. v. Pub. Utils. Comm'n , 58 P.3d 47, 48 (Colo. 2002).
¶ 26 Accordingly, the juvenile court had subject matter jurisdiction to determine paternity under the UPA within the context of the dependency and neglect proceeding. And, the court properly considered the competing presumptions of paternity and determined the child's legal father.
IV. Conclusion
¶ 27 The judgment is affirmed.
JUDGE ROMÁN and JUDGE DUNN concur.