23CA1142 Peo in Interest of EG-M 07-25-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA1142 El Paso County District Court No. 20JV866 Honorable Lin Billings Vela, Judge The People of the State of Colorado, Appellee, In the Interest of E.G-M. and V.G-M., Children, and Concerning G.M., Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE NAVARRO Pawar and Johnson, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 25, 2024 Kenneth R. Hodges, County Attorney, Shannon Boydstun, Assistant County Attorney, Colorado Springs, Colorado, for Appellee Josi McCauley, Guardian Ad Litem Just Law Group, LLC, John F. Poor, Denver, Colorado, for Appellant 
1 ¶ 1 In this dependency and neglect proceeding, G.M. (presumptive father) appeals the judgment declaring F.E.G. (biological father) the legal father of twins, E.G-M. and V.G-M. (the children). We affirm. I. Background ¶ 2 In November 2020, the El Paso County Department of Human Services (the Department) filed a petition in dependency and neglect, alleging that presumptive father was not able to meet the heightened needs of the children, who were twenty-one months old. The juvenile court granted temporary custody of the children to the Department for placement in foster care. ¶ 3 The petition listed presumptive father, unknown mother, and unknown father as respondents. At the shelter hearing, presumptive father asserted that paternity was not at issue. The court adjudicated the children dependent and neglected and adopted a treatment plan for presumptive father. ¶ 4 Eight months later, mother appeared in the case for the first time. At the next hearing, the juvenile court ordered presumptive father to complete genetic testing based on representations from mother that he might not be the child’s genetic father. Presumptive father objected to testing “on the basis he feels he has been the 
2 father and is on the birth certificate.” The court affirmed that presumptive father had a presumption of parentage but ordered genetic testing nonetheless because “there may be other legal presumptive parents out there.” ¶ 5 A few months after that hearing, mother filed a paternity affidavit listing biological father as the only possible genetic father of the children. The court again ordered presumptive father to complete genetic testing. The court amended the petition and added biological father as a respondent. ¶ 6 In February 2022 (over two years after the petition was filed), the juvenile court ordered both presumptive father and biological father to complete genetic testing, noting this would be the third order for presumptive father to participate in the testing. ¶ 7 Two months later, presumptive father requested a paternity hearing. Although genetic testing revealed that presumptive father was not the child’s genetic parent, he asserted two presumptions of paternity: (1) he was married to mother at the time of the birth and appeared on the birth certificates and (2) he was the psychological father. Biological father had not yet completed a scheduled genetic 
3 test; even so, he asserted that he believed he was the genetic father and asked the Department to arrange for family time. ¶ 8 A February 2023 parentage hearing was converted into an appearance review at presumptive father’s request because of a change in his counsel. At that hearing, the parties agreed that all the pending hearings should “start over” and should be held in front of a district court judge. All parties agreed that paternity was the “number one” issue that needed to be resolved. ¶ 9 Following a contested hearing in May 2023, the juvenile court adjudicated biological father as the legal father of the children. II. Parentage ¶ 10 A juvenile court may determine a child’s parentage as part of a dependency and neglect proceeding. See People in Interest of J.G.C., 2013 COA 171, ¶ 10. When a parentage issue arises in a nonpaternity proceeding, the court must follow the procedures outlined in Colorado’s Uniform Parentage Act (UPA). Id. at ¶ 11. ¶ 11 Under the Children’s Code, a “parent” is “either a natural parent of a child, as may be established pursuant to article 4 of this title 19, or a parent by adoption.” § 19-1-103(105)(a), C.R.S. 2023. 
4 ¶ 12 Under article 4 (the UPA), a presumption of parentage may arise from various circumstances. As relevant here, such a presumption may arise if: • the person was married to the parent who gave birth to the child when the child was born, as provided in section 19-4-105(1)(a), C.R.S. 2023; • the person receives the child into their home and “openly holds out the child as the person’s natural child,” as provided in section 19-4-105(1)(d); or • genetic or other tests of inherited characteristics have been administered, and the results show that the alleged parent is not excluded as the probable genetic parent and that the probability of their parentage is ninety-seven percent or higher, as provided in section 19-4-105(1)(f). ¶ 13 A presumption of parentage can be rebutted by clear and convincing evidence. § 19-4-105(2)(a). None of the presumptions is conclusive, including the presumption based on biology. N.A.H. v. S.L.S., 9 P.3d 354, 361-62 (Colo. 2000). ¶ 14 If two or more conflicting presumptions arise, and none has been overcome by clear and convincing evidence, the presumption 
5 that is founded on the weightier considerations of policy and logic controls. § 19-4-105(2)(a). In determining which of the conflicting presumptions controls, the court must consider “all pertinent factors” including those listed in section 19-4-105(2)(a)(I)–(VIII). The inquiry is fact-intensive, and the court must focus on the best interests of the child when weighing competing presumptions of parenthood. N.A.H., 9 P.3d at 362. ¶ 15 In a parentage decision, the juvenile court has the authority to assess the credibility of the witnesses, evidence, and parties’ competing claims as to the children’s best interests. Id. at 365. We “afford[] the trial judge significant deference” in the assessment of the “myriad relevant facts that may properly influence” a determination of parentage. Id. Therefore, we defer to the court’s factual findings if they are supported by the record. People In Interest of K.L.W., 2021 COA 56, ¶ 42. A. Competing Presumptions ¶ 16 It is uncontested that presumptive father and biological father were each entitled to competing presumptions. ¶ 17 Presumptive father asserted that he was entitled to presumptions of parentage because he was married to mother when 
6 the children were born, appeared on their birth certificates, and received the children into his home. ¶ 18 Biological father asserted that he was entitled to a presumption of parentage because he completed genetic testing that showed the probability of his parentage was higher than ninety-
seven percent. ¶ 19 At the hearing, no party attempted to rebut the presumptions. Instead, the argument of the parties and the analysis of the juvenile court centered on the factors listed in section 19-4-105(2)(a). B. A Voluntary Acknowledgment of Parentage ¶ 20 A voluntary acknowledgement of parentage that complies with section 19-4-105 and other statutes “is equivalent to an adjudication of parentage” and may be challenged only “on the basis of fraud, duress, or mistake of material fact, with the burden of proof upon the challenger.” § 19-4-105(2)(c)-(d). ¶ 21 Presumptive father asserts that the juvenile court erred by not determining if his appearance on the children’s birth certificates gave rise to a legal finding of paternity that would have rebutted all other presumptions of parentage. 
7 ¶ 22 That is not, however, the argument he made before the juvenile court. ¶ 23 Throughout the proceeding, presumptive father asserted that his name was listed on the birth certificate. But he always made this assertion in the context of his claim that he was entitled to multiple presumptions of parentage. For example, during closing arguments at the parentage hearing, he asserted he “me[t] criteria under several of those presumptions” because he appeared on the birth certificates. ¶ 24 Because presumptive father’s argument on appeal (that the birth certificate may have qualified as an independent adjudication of parentage) is different from his argument to the juvenile court (that the birth certificate created a presumption of parentage), we decline to address it. See People in Interest of M.B., 2020 COA 13, ¶ 14; People v. Ujaama, 2012 COA 36, ¶ 37 (explaining that issues are unpreserved when the grounds raised on appeal are different from those raised below). C. The Impact of Delaying a Parentage Finding ¶ 25 Presumptive father next contends that the juvenile court erred by “wrongfully infer[ring] that [he] had not promptly and proactively 
8 asserted his parental status” and then applying that inference to its analysis under the factors in section 19-4-105(2)(a). Because there is some record support for the court’s findings, we will not disturb them. ¶ 26 In its oral ruling, the court thoroughly weighed the factors in section 19-4-105(2)(a). The first factor is the length of time between the proceedings and when the presumed parent was placed on notice that they might not be the genetic parent. § 19-4-105(2)(a)(I). The court found that both presumptive father and biological father “sat on this for a significant amount of time.” As relevant to presumptive father’s appeal, the court found that obtaining a legal parentage finding was not a priority to presumptive father and that he could have brought the motion sooner if he “truly wanted to be found the children’s legal father.” ¶ 27 Presumptive father contends that juvenile court’s finding that he delayed in asserting his paternity was erroneous. True, he asserted that he was the children’s father throughout the proceedings and asked for a parentage hearing in April 2022, more than a year before the hearing was finally held. The magistrate who oversaw much of the case noted that delays in holding the 
9 parentage hearing were largely attributed to “logistical issues” including docketing problems that caused an eight-month gap between hearings of any kind in the case. ¶ 28 And we acknowledge that the district court might not have started the parentage hearing fully aware of these docketing delays. At the start of the hearing, the court noted that presumptive father filed a written motion only two days before the hearing and asked if the parties were prepared to address the parentage issue. ¶ 29 Still, we are not persuaded by presumptive father’s argument for two reasons. First, in response to the court’s questions about the “late motion,” the parties said that parentage had “been raised orally in court . . . at every single hearing” since biological father was added as a respondent and that they “had been requesting a paternity hearing for over a year” in front of the magistrate. All parties agreed that the purpose of the May 2023 hearing was to address parentage. Furthermore, at the end of the hearing, the court acknowledged the delay and “apologize[d] that it took that long to get [parentage] handled. That should have happened far ahead of today’s date.” 
10 ¶ 30 Second, the court heard evidence that presumptive father knew or should have known that he was not the biological father before the Department became involved, but he did not take steps to establish his parentage. Presumptive father testified that he did not know mother was pregnant with the children and was not present for their birth. He testified that mother never told him that the children were his. After first refusing to answer if he and mother had sexual intercourse within the ten months before the children were born, presumptive father testified that he could not remember. Presumptive father did not meet the children until they were “maybe six or seven months” old. He testified that he knew the children existed before then but could not recall how or when he learned of their birth. Presumptive father testified that other people suggested that the children were not his, but he did not accept that idea because, when he married mother, he “took the load” of caring for them. He also testified, however, that he knew mother had another child with his last name but who lived with her “real father.” Presumptive father testified that, even after he found out he was not the children’s genetic father, he “still remained their 
11 daddy.” But it was unclear from his testimony when he learned or started to believe that he was not their genetic parent. ¶ 31 It was the juvenile court’s responsibility, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. People in Interest of C.A.K., 652 P.2d 603, 613 (Colo. 1982). When the evidence conflicts, a reviewing court may not reweigh the evidence or substitute its judgment for the juvenile court’s judgment merely because there might be evidence supporting a different result. See People in the Interest of A.J.L., 243 P.3d 244, 256 (Colo. 2010). ¶ 32 Given that there is record support for the juvenile court’s finding that presumptive father delayed pursuing a finding of legal parentage, we will not disturb the court’s findings or legal conclusions based on those findings, including the court’s weighing of the other factors in section 19-4-105(2)(a). III. Ineffective Assistance of Counsel ¶ 33 Presumptive father next contends that, by “failing to adequately apprise the court of the duration and seriousness of [presumptive father]’s commitment to parenting the children, [presumptive father]’s trial counsel provided him with ineffective 
12 assistance of counsel, prejudicing the outcome of the parentage hearing.” In particular, presumptive father asserts that trial counsel should have called his psychiatrist, pain management doctor, and life skills worker to testify. We are not persuaded. ¶ 34 Colorado case law recognizes that a parent’s statutory right to counsel includes the right to effective assistance of counsel. See A.R. v. D.R., 2020 CO 10, ¶ 47; People in Interest of S.L., 2017 COA 160, ¶ 58; People in Interest of C.H., 166 P.3d 288, 290 (Colo. App. 2007). ¶ 35 To successfully make an ineffective assistance of counsel claim, a parent must show that (1) counsel’s performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel’s errors. A.R., ¶¶ 48, 60; C.H., 166 P.3d at 291-92. ¶ 36 An ineffective assistance of counsel claim must allege facts with sufficient specificity to be successful if those facts were true, including, for example, the expected names of witnesses to be called, the expected substance of testimony, and a clear explanation of how that testimony would demonstrate that trial counsel’s 
13 performance was outside the wide range of professionally competent assistance. See C.H., 166 P.3d at 291. ¶ 37 To show prejudice, the parent must show a reasonable probability that the outcome of the proceeding would have been different but for counsel’s deficient performance or unprofessional errors. A.R., ¶ 60. If the parent’s allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim. See C.H., 166 P.3d at 291. In other words, a remand for an evidentiary hearing is required only if the parent’s allegations are sufficiently specific and compelling to constitute a prima facie showing of ineffective assistance of counsel. Id. ¶ 38 We conclude that presumptive father’s allegations lack sufficient specificity to warrant a hearing. See id. While presumptive father suggests specific witnesses who might have been called, he does not provide the expected substance of their testimony. Presumptive father refers instead to earlier testimony provided by his psychologist and pain management doctor. The juvenile court, however, heard testimony from those professionals. As the court explained, their testimony “wasn’t as to paternity, but . . . as to some of the other issues we’ve had in the case quite a long 
14 time ago.” Regarding presumptive father’s assertion that his life skills provider “would have testified to [presumptive father]’s positive parenting attributes,” the assertion is not specific enough to constitute the prima facie showing necessary to remand the matter. ¶ 39 Furthermore, while presumptive father now alleges that his counsel failed to apprise the court of the “duration and seriousness of [his] commitment to parenting the children,” our review of the record reveals that this desire was not in doubt. Presumptive father testified that he stepped in to care for the children when they were around six or seven months old. His desire to continue parenting the children was also supported by the caseworker, who reported that presumptive father (1) was “a nice guy and he loves these children”; (2) had good interactions with the children at her last observation; and (3) was “very loving and affectionate” with the children. The juvenile court said it “simply can’t find there is a significant close relationship . . . . Not because [presumptive father] doesn’t love them, not because he doesn’t want to be there for [them], [but] because we haven’t been able to progress very far in this case.” 
15 ¶ 40 Therefore, we conclude that presumptive father has not raised sufficiently specific or compelling allegations to constitute a prima facie showing of ineffective assistance of counsel. IV. Conclusion ¶ 41 The judgment is affirmed. JUDGE PAWAR and JUDGE JOHNSON