24CA0583 Peo in Interest of ADH 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0583
Arapahoe County District Court No. 23JV16
Honorable Victoria Ellen Klingensmith, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of A.D.H. a Child,

and Concerning D.H.,

Appellant,

and C.B.,

Appellee.

---

JUDGMENT AFFIRMED

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Ronald Carl, County Attorney, Sarah Simchowitz, Assistant County Attorney, Aurora, Colorado, for Appellee

Alison A. Bettenberg, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant D.H.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellee C.B.

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     In February 2024, the juvenile court, as part of this dependency and neglect proceeding, had to decide between three competing claims of parentage for A.D.H. (the child). The court determined that the biological father was the child's legal parent, and the mother's former girlfriend appealed. We affirm.

## I.     Relevant Facts

¶ 2     In 2017, S.V. (mother) and J.V. (wife) married.

¶ 3     In late 2021, during the couple's separation, mother lived in Alabama at the home of C.B. (father) and his spouse. Mother and father had a sexual encounter, which led to her pregnancy.

¶ 4     After three months in Alabama, father drove mother to Colorado. A short time later, she began dating D.H. (girlfriend).

¶ 5     On August 25, 2022, mother, with girlfriend present, gave birth to the child.

¶ 6     In October, girlfriend completed a drug rehabilitation program and later entered a sober living facility. Then, mother, girlfriend, and the child moved into a new apartment together.

¶ 7     In January 2023, the Arapahoe County Department of Human Services filed a petition in dependency and neglect regarding the child. The petition named mother as a respondent, and girlfriend

1

as a special respondent because she was living with mother and the child; it did not identify father, instead listing a "John Doe." The Department alleged that (1) mother had an outstanding warrant for non-compliance with probation, stemming from a charge of possession of a controlled substance; (2) girlfriend, who had a history of significant drug use and a lengthy criminal history, violated probation by testing positive for methamphetamine and fentanyl; and (3) mother and girlfriend were trafficking drugs and assaulted an individual at their apartment. The Department placed the child with maternal grandmother.

¶ 8 In August, due to mother's marriage to wife and the possibility of father's parentage, the Department amended the petition to include them both.

¶ 9 On February 9, 2024, the juvenile court held an evidentiary hearing on the issue of the child's parentage. By this time, girlfriend and mother had broken up, and mother and wife were working on their marriage. Girlfriend, then incarcerated, participated by phone.

¶ 10 The court recognized that there were three competing presumptions of parentage under the Uniform Parentage Act (UPA)

and, after considering the factors in section 19-4-105(2)(a), C.R.S. 2024, plus the child's best interests, the court named father the child's legal parent.

¶ 11     Girlfriend now appeals.

## II.     Parentage Determination

¶ 12     Girlfriend contends that the juvenile court erred by not designating her the child's legal parent. We disagree.

¶ 13     A juvenile court may determine a child's parentage as part of a dependency and neglect proceeding. *People in Interest of J.G.C.*, 2013 COA 171, ¶ 10. When a parentage issue arises in such a proceeding, the court must follow the UPA. *See People in Interest of O.S-H.*, 2021 COA 130, ¶ 40.

¶ 14     Under the UPA, parentage is not limited to persons with a biological connection to the child. *In re Parental Responsibilities Concerning A.R.L.*, 2013 COA 170, ¶ 19. Instead, the juvenile court must first determine whether one of the statutory presumptions of parentage outlined in section 19-4-105(1) applies. *People in Interest of C.L.S.*, 313 P.3d 662, 666 (Colo. App. 2011). In this context, a person is considered a presumed parent if (1) the person and the child's natural parent are or have been married to each other and

the child is born during the marriage; (2) the person "receives the child into the person's home and openly holds out the child as the person's natural child"; or (3) genetic testing shows the person cannot be excluded as the likely biological parent and "the probability of the person's genetic parentage is ninety-seven percent or higher." § 19-4-105(1)(a), (d), (f).

¶ 15    If a presumption is established, parties may rebut it by clear and convincing evidence. § 19-4-105(2)(a); *J.G.C.*, ¶ 21. But like here, when two or more conflicting presumptions arise, and none has been overcome by clear and convincing evidence, the presumption founded on the weightier considerations of policy and logic control. *See* § 19-4-105(2)(a); *People in Interest of K.L.W.*, 2021 COA 56, ¶ 70. To that end, the juvenile court must consider the following factors:

> (I) The length of time between the proceeding to determine parentage and the time that the presumed parent was placed on notice that the presumed parent might not be the genetic parent, unless the child was conceived through an assisted reproductive procedure;

> (II) The length of time during which the presumed parent has assumed the role of the child's parent;

4

(III) The facts surrounding the presumed parent's discovery of the possibility that the presumed parent was not a genetic parent, unless the child was conceived through an assisted reproductive procedure;

(IV) The nature of the existing parent-child relationship;

(V) The child's age;

(VI) The child's relationship to any presumed parent or parents;

(VII) The extent to which the passage of time reduces the chances of establishing another person's parentage and a child support obligation in favor of the child; and

(VIII) Any other factors that may affect the equities arising from the disruption of the parent-child relationship between the child and the presumed parent or parents or the chance of other harm to the child.

19-4-105(2)(a). The court, however, is not limited to those factors. *See K.L.W.*, ¶¶ 51-52.

¶ 16    This inquiry is fact intensive, and the juvenile court must focus on the child's best interests and not the rights of, or the fairness to, each of the presumptive parents. *K.L.W.*, ¶ 50; *see A.R.L.*, ¶ 18 ("[A]t the heart of any parentage decision is the child's best interests.").

¶ 17    We review for abuse of discretion the juvenile court's fact-intensive process of weighing the UPA factors and the child's best interests to determine which parentage presumption should control. *See W.C. in Interest of A.M.K.*, 907 P.2d 719, 722-23 (Colo. App. 1995); *see also N.A.H. v. S.L.S.*, 9 P.3d 354, 362-66 (Colo. 2000); *K.L.W.*, ¶¶ 41, 51-52.  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair.  *See W.C.*, 907 P.2d at 723.  We review factual findings for clear error, meaning we will not disturb them if they are supported by the record.  *K.L.W.*, ¶ 42.

¶ 18    Once the juvenile court finds that a person with a presumption of parentage is the child's legal parent, the other person with the competing presumption of parentage becomes a nonparent with no rights or responsibilities regarding the child. *K.L.W.*, ¶ 21.

¶ 19    Here, the juvenile court recognized that there were three competing presumptions of parentage: (1) wife, who was married to mother at the time the child was born; (2) girlfriend, who accepted the child into her home and held the child out as her own; and (3) father, whose DNA test results confirmed a 99.99% probability of

6

parentage. *See* § 19-4-105(1)(a), (d), (f). The court determined that none of the three presumptions had been rebutted by clear and convincing evidence. *See* § 19-4-105(2)(a).

¶ 20    In determining which presumption should control based on the weightier considerations of policy and logic under section 19-4-105(2)(a), the court made the following findings:

- From the moment mother learned of her pregnancy, all parties were on notice.

- Wife did not assume a parental role in the same way as girlfriend and father.

- Girlfriend was heavily involved throughout mother's pregnancy. She attended mother's prenatal appointments, was present at the child's birth, and assumed a parental role thereafter. She did not miss any family time visits, and a bond had formed between her and the child.

- Father assisted mother with early medical appointments, drove her back to Colorado, and maintained contact throughout the pregnancy. While not as involved in the child's day-to-day care as girlfriend, he too assumed the

role of a parent. He strongly asserted that he was the child's father and expressed a clear desire to build a relationship with the child. Once the DNA test results confirmed his biological parentage, father visited the child several times in Colorado.

- The child was eighteen months old at the time of the hearing and had developed relationships with all three presumptive parents.

- Mother did not disclose to the Department that father was the child's biological parent. His name surfaced in July 2023, only after a disagreement between mother and maternal grandmother during a Department visit. The caseworker testified that mother, at that time, "was not happy to get [him] involved in this proceeding." Withholding that critical information hindered father's involvement with the child, thereby affecting the child's best interests. That fact — including his assertion of parentage and engagement in the child's life since birth — and considered in conjunction with public policy and

8

principles of equity, supported his claim of legal parentage.

- Father and his spouse have a home in Alabama with a bedroom prepared for the child; and father, who is gainfully employed, was ready and willing to parent and financially support the child.

¶ 21 The juvenile court determined that designating father the child's legal parent would best serve the child's interests. The court acknowledged that girlfriend had formed a bond with the child, but it found that father's consistent assertion of parentage, the withholding of this information, and his eventual involvement outweighed girlfriend's competing presumption.

¶ 22 Because the juvenile court considered the relevant statutory factors along with the child's best interests, and made the necessary findings, which have record support, we discern no abuse of discretion in granting father the status of legal parent. *See W.C.*, 907 P.2d at 722-23; *see also N.A.H.*, 9 P.3d at 362-66; *K.L.W.*, ¶¶ 41, 51-52.

¶ 23 Still, girlfriend argues that the juvenile court gave "little consideration" to the child's best interests. She states that she was

the only presumed parent who had developed a loving and bonded relationship with the child, acting in a parental capacity during the pregnancy, after the birth, and during the pendency of the case. She adds that her family time with the child "went very well." But her argument essentially asks us to reweigh the evidence, which we cannot do. *See K.L.W.*, ¶ 62 (it is not the appellate court's role to reweigh the evidence or substitute its judgment for that of the juvenile court); *see also People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 15 (it is for the juvenile court to determine witness credibility and the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom); *N.A.H.*, 9 P.3d at 365 (the district court is accorded "significant deference" in determining a child's best interests relative to a parentage determination).

## III. Disposition

¶ 24    The judgment is affirmed.

JUSTICE MARTINEZ and JUDGE GRAHAM concur.