24CA1024 Peo in Interest of LW 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1024
El Paso County District Court No. 22JV30014
Honorable Scott Bradford Epstein, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.W., a Child,

and Concerning K.H. and B.J.W.,

Appellants.

---

JUDGMENT AFFIRMED IN PART, REVERSED IN PART,
AND VACATED IN PART, AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE YUN
J. Jones and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Kenneth Hodges, County Attorney, Melanie Douglas, Contract Attorney, Colorado Springs, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant K.H.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant B.J.W.

¶ 1    K.H. appeals the judgments adjudicating L.W. (the child) dependent or neglected and terminating parental rights.  We reverse the adjudication judgment, vacate the termination judgment, and remand the case to the juvenile court for further proceedings consistent with this opinion.

¶ 2    B.J.W. (mother) also appeals the judgment terminating her legal relationship with the child.  We affirm.

## I.    Background

¶ 3    In May 2021, mother gave birth to the child, who tested positive for methamphetamine.  The El Paso County Department of Human Services (Department) created a safety plan with mother, in which she agreed to enter treatment while the child would reside with a family friend.  But mother did not complete treatment, and the Department could not locate her.

¶ 4    Based on this information, the Department filed a petition in dependency or neglect, assumed temporary legal custody of the child, and placed the child with a foster family.  When the Department filed the initial petition, it did not have any information about the child's father and therefore named "unknown father" as a respondent.  The Department eventually located mother in custody,

1

the juvenile court adopted a treatment plan for her, and the court requested that she submit a paternity affidavit.

¶ 5    In February 2023, mother filed the affidavit, which listed three possible fathers, including K.H.; at a subsequent hearing, mother named a fourth possible father. The Department then submitted amended petitions listing all four individuals and "unknown father," as respondents. In May 2023, K.H. appeared in response to the summons, the juvenile court appointed counsel for him, and he agreed to submit to genetic testing. But K.H. did not comply with testing and never reappeared in court.

¶ 6    In August 2023, the juvenile court held an adjudicatory trial for K.H. At the hearing, K.H.'s counsel asserted that the court could not enter an adjudication judgment against her client without first establishing that he was the child's parent under Colorado's Uniform Parentage Act (UPA). The court disagreed and adjudicated the child dependent or neglected with respect to K.H. under subsections (1)(b) and (1)(d) of section 19-3-102, C.R.S. 2024. The court then determined that no appropriate treatment plan could be devised for K.H.

2

¶ 7 In January 2024, the Department moved to terminate the parental rights of mother and K.H. (as well as the three other possible fathers and unknown father). The juvenile court held an evidentiary hearing in May 2024. K.H.'s counsel continued to argue that the court needed to establish that K.H. was a parent before it could terminate his parental rights. Ultimately, the court granted the Department's motion and terminated mother's parental rights under section 19-3-604(1)(c), C.R.S. 2024, and K.H.'s parental rights under section 19-3-604(1)(a).

## II. K.H.'s Appeal

¶ 8 K.H. asserts that the juvenile court erred by entering adjudication and termination judgments against him without establishing that he was the child's parent. For the reasons explained below, we agree.

### A. Standard of Review

¶ 9 K.H.'s appeal requires us to (1) determine whether the juvenile court had jurisdiction; (2) consider whether the evidence was sufficient; and (3) interpret statutes. The following standards of review apply.

¶ 10    "Whether a child is dependent [or] neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds." *People in Interest of M.M.*, 2017 COA 144, ¶ 17.  In determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party, drawing every reasonable inference from the evidence in favor of the juvenile court's decision.  *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).  We review the court's factual findings for clear error, and we will not disturb them if they are supported by the record.  *Id.*  But we review the court's legal conclusions de novo, and we may set aside a court's order based on errors of law or findings that do not conform to the statutory criteria.  *People in Interest of S.K.*, 2019 COA 36, ¶ 41; *S.G.L.*, 214 P.3d at 583.

¶ 11    Statutory interpretation is a question of law that we review de novo.  *People in Interest of C.L.S.*, 313 P.3d 662, 665-66 (Colo. App. 2011).  In construing a statute, we look at the entire statutory scheme to give consistent, harmonious, and sensible effect to all its parts.  *People in Interest of L.M.*, 2018 CO 34, ¶ 13.  We apply words and phrases in accordance with their plain and ordinary meanings,

4

*People in Interest of K.L.W.*, 2021 COA 56, ¶ 13, and we do not add or subtract words from statutes, *A.M. v. A.C.*, 2013 CO 16, ¶ 17. If the statute's language is clear and unambiguous, we apply it as written. *People in Interest of J.G.*, 2016 CO 39, ¶ 13.

¶ 12 Finally, when the facts are undisputed, the scope of the juvenile court's jurisdiction presents questions of law that we review de novo. *People in Interest of J.W. v. C.O.*, 2017 CO 105, ¶ 17.

## B. Legal Framework

¶ 13 A juvenile court has exclusive original jurisdiction in both dependency or neglect proceedings and proceedings to determine the parentage of a child. § 19-1-104(1)(b), (f), C.R.S. 2024; *People in Interest of N.S.*, 2017 COA 8, ¶ 20.

¶ 14 Dependency or neglect proceedings are governed by Article 3 of the Colorado Children's Code, §§ 19-3-100.5 to -905, C.R.S. 2024, and they are initiated by the filing of a petition alleging that a child is dependent or neglected, § 19-3-502(1), C.R.S. 2024. The petitioner has the burden to prove the allegations in the petition by a preponderance of the evidence at an adjudicatory hearing. § 19-3-505(1), C.R.S. 2024. If the government proves the

allegations, the juvenile court will sustain the petition and adjudicate the child dependent or neglected.  § 19-3-505(7).

¶ 15    An adjudication is not made "as to" a parent, *People in Interest of S.B.*, 742 P.2d 935, 939 (Colo. App. 1987), but the petitioner must still prove the allegations with respect to each respondent, *People in Interest of U.S.*, 121 P.3d 326, 328 (Colo. App. 2005). "[T]he factual status of a child as dependent or neglected [is] a jurisdictional prerequisite to the entry of permanent orders."  *People in Interest of T.W.*, 2022 COA 88M, ¶ 52.

¶ 16    Following an adjudication, the juvenile court must hold a dispositional hearing and determine whether a treatment plan can be devised.  *See* §§ 19-3-507, 19-3-508(1), C.R.S. 2024.  In some circumstances, such as this case, the court may determine that a treatment plan cannot be devised "because the child has been abandoned."  § 19-3-508(1)(e)(I).  If the court determines that no appropriate treatment plan can be devised, the termination hearing serves as the dispositional hearing.  *People in Interest of M.S.*, 2012 COA 211, ¶¶ 2-3 (in a case with no appropriate treatment plan, a respondent cannot appeal the adjudication until entry of the termination judgment).

¶ 17    Proceedings to determine parentage of a child are governed by Article 4 of the Children's Code, otherwise known as the UPA. *See* §§ 19-4-101 to -130, C.R.S. 2024. If a paternity issue arises in a dependency or neglect proceeding, the juvenile court has the authority to resolve the paternity question in the dependency or neglect case. *People in Interest of J.G.C.*, 2013 COA 171, ¶ 10. However, in doing so, the court must follow the procedures outlined in the UPA. *N.S.*, ¶ 21.

## C.    Adjudication

¶ 18    K.H. asserts that the juvenile court erred because it either (1) did not have subject matter jurisdiction or (2) did not have the "authority" to enter an adjudication. As to the former, we disagree because this proceeding fell within the class of cases that the court may hear, and it therefore had subject matter jurisdiction to enter an adjudication. *See* § 19-1-104(1)(d); *C.O.*, ¶¶ 24-25; *see also* *T.W.*, ¶ 29. As to the latter, we construe K.H.'s assertion as a challenge to whether the court had the authority to enter an adjudication without the Department providing evidence that he was the child's parent. For the reasons explained below, we conclude the court did not have such authority.

¶ 19    The Children's Code is silent on whether a juvenile court may enter an adjudication under Article 3 without first determining parentage under Article 4.  However, we need not decide whether a parentage determination is required in every dependency or neglect case because we conclude that, under the circumstances here, the court could not enter an adjudication with respect to K.H.

¶ 20    As relevant to this case, a child is dependent or neglected if (1) "[t]he child lacks proper parental care through the actions or omissions of the *parent, guardian,* or *legal custodian,*" § 19-3-102(1)(b) (emphasis added); or (2) "[a] *parent, guardian,* or *legal custodian* fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being," § 19-3-102(1)(d) (emphasis added).  Because the Department did not allege that K.H. was the child's "guardian" or "legal custodian," the Department needed to show that K.H. was a "parent" to enter an adjudication under subsections (1)(b) or (1)(d).

¶ 21    The Children's Code defines "parent" as, among other things, "a natural parent of a child, as may be established" under the UPA. § 19-1-103(105)(a), C.R.S. 2024.  In turn, the UPA defines "natural

8

parent" as "a nonadoptive parent established pursuant to . . . article 4, whether or not biologically related to the child."  § 19-4-102.5(3), C.R.S. 2024.  Consequently, the juvenile court needed to determine whether K.H. was a "natural parent" under the UPA for him to qualify as a "parent" for purposes of an adjudication under section 19-3-102(1)(b) or (d).

¶ 22    However, the record clearly shows that, although the juvenile court could have determined parentage under the UPA before entering an adjudication, it specifically declined to do so.  The court expressed concern about conducting a paternity proceeding because doing so would "essentially be flipping a coin to try to see which one of the named fathers . . . should be adjudicated as legal father of this child."  The court therefore decided to "go[] forward with the adjudicatory phase as to [all the alleged fathers] without resolving paternity."

¶ 23    Therefore, because the juvenile court did not adjudicate parentage, K.H. could not meet the definition of "parent" in the Children's Code.  And because the record does not establish that K.H. was a "parent," the court erred by finding that the child was dependent or neglected with respect to him under subsections (1)(b)

and (1)(d), considering that both of those subsections require conduct by a "parent, guardian, or legal custodian." In other words, although the Department alleged that K.H. was the child's parent, it never proved that allegation. *See Crawford v. M & K Mobile Homes, Inc.*, 488 P.2d 232, 236 (Colo. App. 1971) (an allegation is not proof).

¶ 24    The Department and the guardian ad litem (GAL) do not provide any authority supporting their position that the juvenile court had the authority to enter an adjudication under section 19-3-102(1)(b) or (1)(d) without a finding that K.H. was a parent, guardian, or legal custodian. Instead, they argue that we should affirm the court's judgment because (1) it was in the child's best interests; (2) any error was harmless; or (3) K.H. invited the error. For the reasons described below, we disagree with all three arguments.

¶ 25    First, the Department and GAL argue that the juvenile court could enter an adjudication without establishing that K.H. was the child's parent because doing so served the child's best interests by preventing a delay in the proceedings. *See* § 19-1-102(1)(c), C.R.S. 2024 (one purpose of the Children's Code is to "proceed with all

possible speed to a legal determination"). But the Department and GAL have not provided any authority holding that the court may relieve the Department of its duty to prove the allegations in its petition by a preponderance of the evidence simply to avoid delay. *See People in Interest of A.M.D.*, 648 P.2d 625, 631 (Colo. 1982) ("Proceedings in dependency or neglect affect important rights, so there must be substantial compliance with statutory requirements for conduct of those proceedings.").

¶ 26    Second, the Department and GAL contend that any error was harmless. We may "disregard any error or defect not affecting the substantial rights of the parties." C.A.R. 35(c). An error affects a substantial right if it can be said with fair assurance that it substantially influenced the case's outcome or impaired the basic fairness of the trial itself. *People in Interest of R.J.*, 2019 COA 109, ¶ 22. In this case, if the juvenile court had not erroneously concluded that it could enter an adjudication under subsection (1)(b) and (1)(d) against an alleged parent, it would not have sustained the petition, entered an adjudication judgment against K.H., and terminated his parental rights. Thus, the error is not harmless.

¶ 27     Third, the Department argues that K.H. invited the error because he did not comply with genetic testing. *See People v. Rediger*, 2018 CO 32, ¶ 34 ("The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case . . . ."). We disagree because K.H. did not induce the erroneous ruling by the juvenile court. In fact, K.H.'s counsel argued against the court taking such an action. *Cf. People in Interest of M.H-K.*, 2018 COA 178, ¶ 20 ("[T]he parents did not [invite the error by] ask[ing] the court to read the petition; they asked the court not to read the petition."). Consequently, the invited error doctrine does not apply.

¶ 28     In sum, we conclude that the juvenile court erred by entering an adjudication with respect to K.H. because the record did not establish that he was a "parent," as required for an adjudication under section 19-3-102(1)(b) and (1)(d). We therefore reverse the judgment adjudicating the child dependent or neglected with respect to K.H.

## D.    Termination

¶ 29    K.H. asserts that the juvenile court's judgment terminating his parental rights is void as a matter of law because the court did not have jurisdiction.  We agree.

¶ 30    A juvenile court's jurisdiction concerns its authority to hear and determine a matter.  *C.O.*, ¶ 21.  A judgment rendered without jurisdiction is void and may be attacked directly or collaterally.  *Id.* As relevant here, "the child's status as dependent or neglected establishes the court's continued jurisdiction over the child" to terminate parental rights.  *Id.* at ¶ 31; *see also T.W.*, ¶ 52.

¶ 31    Because we have concluded above that the juvenile court erred by entering an adjudication judgment against K.H., the court did not have continuing jurisdiction with respect to K.H. to enter a judgment terminating his parental rights.  *See T.W.,* ¶ 54 (an adjudication is a "necessary step that grants a juvenile court continuing jurisdiction" to enter a permanent order).  Therefore, the court's termination judgment is void, and we must vacate it.  *See C.O.*, ¶ 21.

### III.  Mother's Appeal

¶ 32    Mother asserts that the juvenile court erred by rejecting less drastic alternatives to termination because it declined to resolve paternity under the UPA.  Assuming, without deciding, that the court erred by failing to determine fraternal parentage in this case, we conclude that any error is harmless as to mother's assertion because the record clearly establishes that a less drastic alternative was not a viable option.

¶ 33    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives.  *People in Interest of M.M.*, 726 P.2d 108, 1122 (Colo. 1986).  In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs.  § 19-3-604(3).  In doing so, the court may consider, among other things, whether (1) an ongoing relationship between the parent and child would be beneficial, *People in Interest of A.R.,* 2012 COA 195M, ¶ 38; and (2) an allocation of parental responsibilities (APR) provides adequate permanence and stability for the child, *People in Interest of T.E.M.*, 124 P.3d 905, 910-11 (Colo. App. 2005).

¶ 34      For a less drastic alternative to be viable, it must do more than adequately meet a child's needs; rather, it must be in the child's best interests. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶ 27. Therefore, if the juvenile court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32. Under those circumstances, we must affirm the court's decision if its findings are supported by the record. *People in Interest of B.H.*, 2021 CO 39, ¶ 81.

¶ 35      The juvenile court found that there was no less drastic alternative to termination. In doing so, the court noted that mother had no contact with the child from shortly after his birth until August 2023, almost one and a half years later. It found that, although mother had a few visits with the child when she was incarcerated, she had simply "dropped off . . . the radar" after her release. Therefore, the court rejected less drastic alternatives, considering that the child had no relationship with mother and the child "desperately need[ed] to continue in a stable place."

¶ 36      The record supports the juvenile court's findings. The caseworker testified that the child was placed in foster care in

February 2022, but the Department did not locate mother until around March 2023 when she was incarcerated. The record shows that, although mother did some classes and a few visits with the child while she was incarcerated, once she was released in February 2024, she did not comply with any components of her treatment plan and did not have any contact with the child. Based on mother's lack of participation in the case and the child's need for stability, the caseworker opined that there were no less drastic alternatives to termination.

¶ 37 On appeal, mother asserts that, if the juvenile court had determined paternity, then there may have been a less drastic alternative in the form of an APR to the natural father or one of his relatives. But the record shows that, other than K.H.'s single appearance in court, none of the alleged fathers appeared or participated in the case. Therefore, even if the court had adjudicated parentage, nothing in the record suggests that there would have been an appropriate relative placement option for the child. Consequently, we are not persuaded by mother's highly speculative assertion.

¶ 38    In any event, even if there was a possible placement option, the record still shows that a less drastic alternative was not an option. The evidence established that mother had done very little to address the Department's concerns regarding the child's safety or to become a fit parent. It also shows that mother had no relationship with the child and that the child needed permanency as soon as possible. In other words, the record establishes that an ongoing relationship with mother would not have been beneficial for the child, *see A.R.*, ¶ 38, and the child needed the permanency that only termination and adoption could provide, *see T.E.M.*, 124 P.3d at 910-11. An available relative placement option would not change this result.

¶ 39    Therefore, because the record supports the juvenile court's determination that termination, not a less drastic alternative, was in the child's best interests, we cannot disturb its decision. *See B.H.*, ¶ 81.

## IV.    Disposition

¶ 40    The judgment adjudicating the child dependent or neglected with respect to K.H. is reversed. The judgment terminating K.H.'s parental rights is vacated. The matter is remanded to the juvenile

17

court to determine whether K.H. is the child's natural father under the UPA or to dismiss him from the case.

¶ 41    The judgment terminating mother's parental rights is affirmed.

JUDGE J. JONES and JUDGE BROWN concur.