214 P.3d 580 (2009)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of S.G.L., Child, and
Concerning E.L., Respondent-Appellant.
No. 08CA2619.
Colorado Court of Appeals, Div. I.
June 25, 2009.
*582 Bob D. Slough, Montezuma County Attorney, Cortez, Colorado, for Petitioner-Appellee.
Jon Lewis Kelly, P.C., Jon L. Kelly, Dolores, Colorado, for Respondent-Appellant.
Opinion by Judge GABRIEL.
E.L. (father) appeals from the order adjudicating his daughter, S.G.L., dependent and neglected. Father argues that the petition could not be sustained as to him because (1) his actions or omissions did not cause the child to lack proper parental care or render her environment injurious, and (2) the evidence as to him was therefore insufficient to support an adjudication. We agree with father and therefore reverse and remand with instructions to dismiss the petition.

I. Background
Father and A.W. (mother) are not married and do not live together. It is undisputed that mother was the child's primary caregiver and that father was only minimally involved in the day-to-day duties of raising her. Orders that father pay child support had been previously entered, but there were no orders regarding father's rights to custody or parenting time.
On July 18, 2008, mother was arrested for driving under the influence of alcohol. At the time of mother's arrest, the child was almost three years old. When sheriff's deputies stopped mother's car, they found the child unrestrained in the front seat, between mother, who was driving, and a friend of hers, both of whom were intoxicated. The deputies also found open bottles of alcohol at the child's feet and drug paraphernalia beneath her.
On July 23, 2008, the People filed a dependency and neglect petition, naming both mother and father as respondents. Mother subsequently admitted the allegations of the petition concerning the child's lack of parental care.
Regarding father, the petition alleged that the child lacked proper parental care and that the child's environment was injurious to her welfare because, among other things, on the evening mother was arrested: (1) the sheriff's deputies requested that the department of social services (department) take emergency custody of the child after father failed to arrive for approximately two hours to pick her up; (2) father arrived without proper child restraints in his vehicle; and (3) when informed that the child would be taken into emergency custody, father stated that he "did not care either way." The record does not reveal why the People did not include a no-fault allegation pursuant to section 19-3-102(1)(e), C.R.S.2008, in the petition, or whether father would have admitted such an allegation.
After a hearing and briefing by the parties, the court determined that the People had proved that the child lacked proper parental care through father's actions or omissions and that her environment was injurious to her health. Specifically, the court found that the child lacked, or would in the future lack, proper parental care because father left her in the care of strangers at night for one and one-half to two hours, and because he arrived without the means to transport her, causing the department to take emergency custody of the child. The court concluded that, like the circumstances in People in Interest of T.T., 128 P.3d 328, 331 (Colo.App. 2005), although the precipitating event was based on mother's actions, there were other facts that supported the finding that father did not, and could not, provide the child with parental care.
After considering a pattern jury instruction defining "injurious environment," the court also found that a child's environment could be found to be injurious to his or her health as long as the environment was under the control of one of the child's parents, without a requirement that it be shown to be under the control or subject to change by both parents or even the one who requests a trial on the issue. The court added, "In this way the [pattern] jury instruction applies but the focus of the trial remains on the child's status not the `guilt' or actions of the parent requesting the trial." Applying this interpretation to the present case, the court determined that the People had shown that the *583 child's environment was injurious to her welfare so as to support the adjudication.
Father now appeals.

II. Discussion

A. Law
A child is neglected or dependent if, as pertinent here, "[t]he child lacks proper parental care through the actions or omissions of the parent" or "[t]he child's environment is injurious to his or her welfare." § 19-3-102(1)(b)-(c), C.R.S.2008. "The purpose of an adjudicatory hearing is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence, and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship." People in Interest of A.M., 786 P.2d 476, 479 (Colo.App.1989).
Each parent has the right to a jury determination as to whether the disputed factual averments in a petition are proved. Id. Accordingly, an admission by one parent to all or part of the allegations of a petition "is not necessarily dispositive of allegations disputed by [the] other named [parent]." Id.
If a petition is sustained, the district court may enter an order of adjudication, which is not made "as to" the parents, but relates only to the status of the child as of the date of the adjudication. K.D. v. People, 139 P.3d 695, 699 (Colo.2006); People in Interest of C.M., 116 P.3d 1278, 1283 (Colo.App.2005). Because a dependency and neglect proceeding is preventative as well as remedial, an adjudication may be based not only on current or past harm but also on prospective harm. People in Interest of D.L.R., 638 P.2d 39, 42 (Colo.1981). Thus, it is not necessary that a child be placed with a parent to determine whether that parent can provide proper care, if such a placement might prove detrimental to a child. Id.
Upon a determination that a child is dependent and neglected, subject to certain exceptions not applicable here, the court must approve an appropriate treatment plan involving the child and each respondent named in the petition and served, unless the court finds that no appropriate treatment plan could be devised as to a particular respondent. Section 19-3-508(1)(e)(I), C.R.S. 2008; People in Interest of D.R.W., 91 P.3d 453, 456 (Colo.App.2004). Because section 19-3-508(1)(e)(I) presupposes an adjudication of the child relative to each parent, however, the court does not have the power to impose a treatment plan on a parent when the child has not been found to be dependent and neglected by that parent. People in Interest of U.S., 121 P.3d 326, 328 (Colo.App.2005).
An adjudication of dependency or neglect must be established by a preponderance of the evidence. People in Interest of A.M.D., 648 P.2d 625, 641 & n. 14 (Colo. 1982); People in Interest of A.E.L., 181 P.3d 1186, 1196 (Colo.App.2008). The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the discretion of the district court. K.D., 139 P.3d at 702.
In determining whether the evidence is sufficient to sustain an adjudication, we review the record in the light most favorable to the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the court's decision. D.L.R., 638 P.2d at 41; T.T., 128 P.3d at 331. We will not disturb a district court's findings and conclusions if the record supports them, even though reasonable people might arrive at different conclusions based on the same facts. K.D., 139 P.3d at 702; People in Interest of R.L., 32 Colo.App. 29, 31, 505 P.2d 968, 970 (1973). We may, however, set aside a district court's order based on errors of law or findings that do not conform to the statutory criteria. See People in Interest of T.L.B., 148 P.3d 450, 457 (Colo.App.2006) (holding in context of order terminating parent-child legal relationship that appellate court may set aside district court's order if the court's findings do not conform to the statutory criteria); People in Interest of T.D., 140 P.3d 205, 215-16 (Colo.App.2006) (appellate court's review of dependency and neglect proceeding is limited to reviewing the record for errors of law).

*584 B. Proper Parental Care
Father first argues that the evidence was insufficient to sustain a finding that the child lacked parental care or would lack parental care in the future as a result of his actions or omissions. We agree.
Here, the district court found that (1) father was in control of deciding when he should retrieve his daughter but did not take immediate steps to secure her safety and well-being; (2) for whatever reason, he did not retrieve his child for a period of one and one-half to two hours; and (3) he arrived late at night without the means to transport the child, which resulted in the child's being taken into protective custody. The court then concluded that father's actions or omissions deprived the child of proper parental care and showed that he would deprive her of proper parental care in the future.
We conclude that the facts found by the district court are insufficient to support the court's dependency and neglect adjudication based on a lack of proper present or future parental care by father. This was a one-time incident in which father received an unexpected call at 8:30 p.m. to come retrieve the child because mother had been arrested for driving under the influence. Although it took father one and one-half to two hours to arrive, it is undisputed that a series of events occurred that were unknown to father and not within his control, and that may well have contributed to his delay in getting to his child. For example, it is undisputed that father had no reason to believe that mother would be driving under the influence with the child in the car. Moreover, the sheriff's deputy who asked father to come get the child was called away on another police matter and left the child with a good Samaritan, thus moving the deputy's vehicle from where father was looking for it. The good Samaritan then waited for father for a time and when father did not arrive promptly, took the child to the sheriff's department, thus moving the child from where father was told to come get her.
We acknowledge that there were some inconsistencies in father's explanation for his delay in arriving. Even assuming father's delay was without good reason, however, where it is undisputed that father had no reason to believe that the child was in any danger (as far as father knew, she was in the care of the deputy sheriff), we cannot agree that such one-time conduct by father was sufficient to support a dependency and neglect adjudication. Cf. 19-3-604(1)(b)(II), C.R.S.2008 (order terminating the parent-child legal relationship may be based on "[a] single incident resulting in serious bodily injury or disfigurement of the child").
Nor does the fact that father arrived without a child seat persuade us otherwise. Father testified, without dispute, that he and mother shared a child seat, and we have located no evidence in the record to suggest that father knew or had reason to know that mother did not have the child seat with her when she was stopped. Moreover, it is undisputed that the department could have provided father with a "loaner" child seat but chose not to do so. Finally, even if father had access to a car seat but for some reason neglected to bring it with him in the unexpected and harried circumstances in which he found himself, we cannot agree that this alone supports a dependency and neglect adjudication based on his lack of proper parental care.
Daugaard v. People, 176 Colo. 38, 488 P.2d 1101 (1971), overruled on other grounds by People v. Ramirez, 155 P.3d 371, 377 (Colo. 2007), on which father relies, is instructive here. In Daugaard, the court held that the mere fact that a child suffers an illness or disease is insufficient to justify a finding of dependency and the drastic action of termination of parental rights, absent a showing by a preponderance of the evidence that such illness or disease was caused by or resulted from a lack of parental care through the acts or omissions of the parents. Id. at 44, 488 P.2d at 1104. Because no such showing was made in the case before it, the supreme court vacated the decree of dependency and the termination of parental rights. Id.
Here, as in Daugaard, there was no evidence to support a conclusion, by a preponderance of the evidence, that father's acts or omissions deprived, or would in the future deprive, the child of proper parental care.
*585 T.T., 128 P.3d at 331, on which the district court relied, is distinguishable. In T.T., the county department of human services filed a dependency and neglect petition with respect to both a baby who tested positive for drugs and alcohol at birth and the baby's older sibling. The father challenged the judgment adjudicating the baby dependent and neglected, claiming that the drugs and alcohol found in the baby were caused by the mother. A division of this court affirmed the adjudication as to the father, however, because there was substantial evidence of the father's own inability to provide proper parental care. Id. For example, the caseworker testified as to serious concerns regarding the father's own drug use, as well as the father's refusal to admit that the mother had used drugs when he and the mother lived together. Id. In addition, drug paraphernalia was found on the father during an unrelated arrest, and the father refused to submit to drug testing. Id. These facts were sufficient, the division concluded, to allow a reasonable jury to find that the child was subjected to abuse or neglect based on the father's own actions or omissions. Id. at 331-32.
Father's conduct in this case in no way approaches the type of conduct deemed sufficient in T.T. to support a dependency and neglect adjudication. Here, there was no evidence that father was involved in any illegal activity. Nor was there evidence to suggest that father did anything that should have led him to understand that he was endangering the child.
Although we do not condone father's delay in retrieving his child, in the circumstances presented, we cannot agree that this single incident was sufficient to support a dependency and neglect adjudication based on father's lack of proper parental care or the imposition of a treatment plan on him. See U.S., 121 P.3d at 328 (court does not have the power to impose a treatment plan on a parent when the child has not been found to be dependent and neglected by that parent); cf. 19-3-604(1)(b)(II) (termination of parent-child legal relationship may be based on single incident resulting in serious bodily injury or disfigurement of child). Accordingly, we conclude that the district court erred in adjudicating the child dependent and neglected under section 19-3-102(1)(b) based on father's conduct.

C. Injurious Environment
Father next contends that the district court erred in adjudicating the child dependent and neglected in relation to father's alleged role in providing an environment injurious to the child's welfare. Again, we agree.
The district court found that the People had proved their injurious environment allegations as to father because mother's conduct created an injurious environment. We conclude that this determination was erroneous as a matter of law.
Although we generally agree with the district court's statement that dependency and neglect adjudications are not made "as to" parents but relate to the status of the child, see K.D., 139 P.3d at 699; C.M., 116 P.3d at 1283, case law also makes clear that each parent has a right to a jury determination as to whether the disputed factual averments in a dependency and neglect petition are proved. A.M., 786 P.2d at 479. This is particularly true here, where mother did not admit the injurious environment allegations and father expressly denied them. Cf. id. (admission by one parent as to allegations in petition is not necessarily dispositive of allegations disputed by the other parent; the parent disputing the allegations had an independent right to have the county prove the allegations by a preponderance of the evidence).
Moreover, we agree with father that the district court erred in sustaining the injurious environment allegation made against him based solely on mother's conduct. Neither the district court nor the parties cited any authority to support such a finding where, as here, it is undisputed that the parents never lived together. Nor have we located any such authority.
In addition, to hold that the child could be found to be dependent and neglected in such circumstances would essentially eliminate the People's burden to prove their allegations against father by a preponderance of the evidence. It would also add to section 19-3-102(1)(c) *586 a no-fault provision that does not exist in the text of the statute. Given that the General Assembly expressly provided for no-fault adjudications in certain circumstances and thus knew how to do so, see § 19-3-102(1)(e), C.R.S.2008, (providing that a child is dependent and neglected where the child "is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian"), we are unwilling to read into section 19-3-102(1)(c) a provision allowing for no-fault adjudications where the dependency and neglect petition is based on an allegation of an injurious environment. See Shelter Mutual Ins. Co. v. Mid-Century Ins. Co., 214 P.3d 489, 493, 2008 WL 5173326 (Colo.App. No. 07CA2063, Dec. 11, 2008) (refusing to read a primacy requirement into coverage mandated by statute at issue where different statute expressly included such a requirement, thus showing that the General Assembly knew how to identify primary insurance coverage when it intended to do so); Husson v. Meeker, 812 P.2d 731, 733 (Colo.App.1991) (where different section of Workers' Compensation Act expressly provided for prejudgment interest, division would not infer that legislature inadvertently failed to provide for such interest in the statute at issue, because legislature knew how to deal with interest in this area when it intended to do so); Holter v. Moore & Co., 681 P.2d 962, 965 (Colo.App. 1983) (where a statute expressly provides a remedy, courts must be chary of reading others into it).
For these reasons, we conclude that the district court erred in determining that the People had proved, by a preponderance of the evidence, their allegation against father that the child's environment was injurious to her welfare within the meaning of section 19-3-102(1)(c).
The order is reversed and the case is remanded to the district court with instructions to dismiss the petition.
Judge TAUBMAN and Judge ROY concur.