23CA2023 Peo in Interest of SEH 07-03-2024 COLORADO COURT OF APPEALS Court of Appeals No. 23CA2023 Mesa County District Court No. 23JV62 Honorable Matthew D. Barrett, Judge The People of the State of Colorado, Appellee, In the Interest of S.H., E.H., A.H., and V.H., Children, and Concerning S.K., Appellant. JUDGMENT AFFIRMED Division I Opinion by JUDGE SCHOCK Welling and Taubman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 3, 2024 Todd Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee Josie L. Burt, Guardian Ad Litem Robin Tieman, Office of Respondent Parents’ Counsel, Boulder, Colorado, for Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 S.K. (mother) appeals the juvenile court’s judgment adjudicating her children, S.H., E.H., A.H., and V.H. (the children), dependent and neglected after a jury trial. We affirm the judgment. I. Background ¶ 2 The Mesa County Department of Human Services (the Department) filed a petition in dependency and neglect concerning the children — then ten, eight, five, and three years old. The petition alleged that a passing motorist had observed mother and the children running across the road yelling for help, as mother carried a machete. The motorist reported that mother said they were being chased, but the motorist did not see anyone chasing them. The motorist called law enforcement, who suspected that mother was experiencing a mental health crisis. The petition also alleged that one of the children had a severe wound on her leg, which prompted law enforcement officers to call an ambulance. ¶ 3 The juvenile court held a three-day adjudicatory jury trial. The jury found, as to all four children, that (1) the children lacked proper parental care as a result of mother’s acts or failures to act; (2) the children’s environment was injurious to their welfare; (3) mother had failed to provide the children with proper or 
2 necessary subsistence, education, medical care, or any other care necessary for their health, guidance, or well-being; and (4) the children were homeless, without proper care, or not domiciled with mother through no fault of mother. See § 19-3-102(1)(b)-(e), C.R.S. 2023. ¶ 4 The juvenile court adjudicated the children dependent or neglected and adopted a treatment plan for mother. II. Applicable Law and Standard of Review ¶ 5 A child may be adjudicated dependent or neglected if the juvenile court finds, by a preponderance of the evidence, that one or more of the conditions in section 19-3-102 exists. § 19-3-505(1), C.R.S. 2023. As relevant to this case, those conditions include: (1) the child lacks proper parental care through the actions or omissions of the parent, guardian, or legal custodian; (2) the child’s environment is injurious to his or her welfare; (3) a parent, guardian, or legal custodian fails or refuses to provide the child with proper or necessary subsistence, education, medical care, or any other care necessary for his or her health, guidance, or well-being; or 
3 (4) the child is homeless, without proper care, or not domiciled with his or her parent, guardian, or legal custodian through no fault of such parent, guardian, or legal custodian. § 19-3-102(1)(b)-(e). ¶ 6 An adjudication of dependency or neglect relates to the status of the children as of the date of the adjudication. See K.D. v. People, 139 P.3d 695, 699 (Colo. 2006). That determination may be based not only on current or past harm but also on prospective harm. People in Interest of G.E.S., 2016 COA 183, ¶ 15. To determine whether a child is dependent or neglected based on prospective harm, the jury must consider whether it is likely or expected that one or more of the conditions in section 19-3-102 will exist in the future, “based on the parent’s past conduct and current circumstances.” People in Interest of S.N., 2014 COA 116, ¶¶ 15-17. ¶ 7 In determining whether the evidence is sufficient to sustain an adjudication of dependency or neglect, we review the record in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the court’s decision. People in Interest of S.G.L., 214 P.3d 580, 583 (Colo. App. 2009). 
4 We may not disturb a jury verdict unless it is clearly erroneous. People v. Interest of T.T., 128 P.3d 328, 331 (Colo. App. 2005). III. Analysis ¶ 8 Mother contends that the evidence at trial was insufficient to sustain the adjudication of dependency or neglect. We disagree. ¶ 9 The Department presented evidence that mother was with the children in the median between a frontage road and the highway, waving a large knife. The passing motorist, who testified at trial, explained that she stopped, and mother and the children jumped in her car yelling that some people “were trying to kill them.” The motorist did not see anyone else and called 911 for assistance. ¶ 10 The motorist testified that at one point, mother “act[ed] like she was going to grab [the motorist’s] arm or something,” and that mother was frantic and “kind of hopping” and “jumping” around in the passenger’s seat. She also testified that children “ke[pt] telling mother that they were thirsty,” but that mother did not respond. ¶ 11 The responding officer testified that mother was “very frantic, very afraid.” He testified that she was “hypervigilant,” “looking all around,” and that, at times, she said she “was possibly seeing somebody,” but no one was there. He further testified that the 
5 children were “very dirty” and “disheveled,” and that one child had a “significant gash” on her leg that led him to call an ambulance. ¶ 12 Mother told the officer that she and the children had been staying with a friend but left because of an argument. Either mother or one of the children informed the officer that they had met a man the night before and that he had provided mother a tent, in which they slept. Mother said that the man “would be helping them out.” Based on mother’s behavior and statements, the officer had mother transported for a mental health evaluation. ¶ 13 The caseworker testified that mother took no responsibility for her actions on the night of the incident and instead blamed others. She refused to take a urinalysis test. Nor did she seek additional mental health care after the incident. And although she eventually completed a psychological exam, she told the caseworker she did not believe it was necessary. Indeed, mother testified at the trial that she had “no reason to address [her] mental health.” ¶ 14 There was also testimony that, at the time of the adjudicatory trial, mother did not have stable housing or employment. Before the incident, mother had lived in a family shelter with the children for some period of time. But the night before the incident, they had 
6 stayed in a tent, and the officer testified that it appeared they may have been living in a storage unit. Mother secured a housing voucher for a four-bedroom home, but she did not use it because the children were not currently living with her. By the time of the trial, mother no longer had the housing voucher. ¶ 15 Based on this and other evidence, a caseworker, who testified as an expert in child protection and child welfare, opined that the children lacked proper parental care; would be in an injurious environment if returned to mother; and were not provided with proper or necessary care for their health and well-being. ¶ 16 Mother admits that the incident on the roadway was “concerning,” but she seeks to cabin it to a single night four months before the adjudicatory trial. She highlights several aspects of her own testimony, including that (1) she intended to return to the family shelter where she had lived previously if the children were returned to her; (2) neither her therapist nor her physician had recommended specific additional mental health services; and (3) she was working part-time. She also points out that she had not missed any family time and that the children had attended school regularly while in mother’s care. And she minimizes certain aspects 
7 of the Department’s evidence, including what she calls a “scrape” (and the officer called a “significant gash”) on one child’s leg and the children’s hunger on the night of the incident. ¶ 17 But it was for the jury to weigh this evidence against the other evidence discussed above. See S.G.L., 214 P.3d at 583; People in Interest of E.S., 49 P.3d 1221, 1226 (Colo. App. 2002). Viewing the evidence in the light most favorable to the Department and drawing every fairly deducible inference in favor of the jury’s decision, we conclude that the record contains sufficient evidence to support the jury’s finding that the children were dependent and neglected. IV. Disposition ¶ 18 The judgment is affirmed. JUDGE WELLING and JUDGE TAUBMAN concur.