24CA1607 Peo in Interest of TK 02-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1607
Delta County District Court No. 23JV30006
Honorable Steven L. Schultz, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of T.K., a Child,

and Concerning R.K.,

Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE LUM
Fox and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

---

John F. Baier, County Attorney, Jodie L. Behrmann, Assistant County
Attorney, Mark Franklin, Assistant County Attorney, Adriana Hartley,
Assistant County Attorney, Delta, Colorado, for Appellee

Alison A. Bettenberg, Counsel for Youth, Centennial, Colorado, for T.K.

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for
Appellant

¶ 1    In this dependency and neglect action, R.K. (father) appeals the judgment entered on a jury's verdict adjudicating T.K. (the youth) dependent and neglected.  We affirm.

## I.    Background

¶ 2    The Delta County Department of Human Services filed a petition in dependency and neglect, alleging concerns about sexual abuse, the condition of the home, a lack of supervision, and the need for supportive services for the youth, who had been diagnosed with learning disabilities and autism spectrum disorder.

¶ 3    Father denied the allegations in the petition and requested an adjudicatory jury trial.  Before the trial, the Department moved for — and the juvenile court granted — summary judgment on the ground that the youth's environment was injurious to her welfare under section 19-3-102(1)(c), C.R.S. 2024.  Father appealed, and a division of this court reversed the adjudication and remanded the case for a trial, noting that, while the undisputed facts about the condition of father's home "could support a jury finding of injurious environment . . . summary judgment is appropriate only if that is the sole inference a reasonable fact finder could draw."  *People in*

*Interest of J.A.K. & T.K.*, (Colo. App. No. 23CA1377, Feb. 8, 2024) (not published pursuant to C.A.R. 35(e)).

¶ 4        On remand, the juvenile court presided over a four-day adjudicatory jury trial. After the conclusion of evidence, the jury returned special verdicts finding that the youth was dependent or neglected under subsections 19-3-102(1)(a), (b), (c), (d), and (e).

## II.    Adjudication

¶ 5        Father contends "the juvenile court erred when it focused solely on prospective harm in determining the [youth] was dependent and neglected because at the time of the adjudication hearing [father] was a fit parent." But the juvenile court did not determine that the youth was dependent or neglected; the jury did. And because the adjudication was based on the special verdict returned by the jury, there were not specific findings of fact and no indication that the youth's adjudication was based on prospective harm as father claims.

¶ 6        We therefore read father's contention that he was a fit parent at the time of the adjudicatory jury trial as a challenge to the sufficiency of the evidence. The youth and Department contend,

and we agree, that there was sufficient evidence to support the jury's verdict and the youth's subsequent adjudication.

### A. Applicable Law and Standard of Review

¶ 7 The purpose of an adjudicatory hearing is to determine the child's status as dependent or neglected under section 19-3-102 and whether that status warrants intervention by the government. *People in Interest of N.G.*, 2012 COA 131, ¶ 39.

¶ 8 An adjudication may not enter without proof, by a preponderance of the evidence, that the child is dependent and neglected. *People in Interest of J.G.*, 2016 CO 39, ¶¶ 15, 53. The preponderance of the evidence standard allows for some uncertainty in the determination of dispositive facts. *See People in Interest of A.M.D.*, 648 P.2d 625, 634 (Colo. 1982).

¶ 9 As relevant here, a youth is dependent or neglected when (1) a parent has subjected the youth to mistreatment or abuse or has allowed another to mistreat or abuse the youth; (2) the youth lacks proper parental care through the actions or omissions of the parent; (3) the youth's environment is injurious to her welfare; (4) a parent fails or refuses to provide the youth with proper or necessary care; or (5) the youth is without proper care through no fault of the

parent. § 19-3-102 (1)(a)-(e). "[S]ection 19-3-102 requires proof of only one condition for an adjudication." *People in Interest of S.M-L.,* 2016 COA 173, ¶ 29, *aff'd on other grounds sub nom People in Interest of R.S. v. G.S.,* 2018 CO 31.

¶ 10 In determining whether the evidence is sufficient to sustain an adjudication of dependency or neglect based on a jury's verdict, we review the record in the light most favorable to the prevailing party, and we draw every inference "fairly deducible" from the evidence in favor of the jury's decision. *People in Interest of S.G.L.,* 214 P.3d 580, 583 (Colo. App. 2009). "The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom," are within the purview of the jury. *Id.* We will not disturb the jury's findings if the record supports them, even if "reasonable people might arrive at different conclusions based on the same facts." *Id.*; *People in Interest of T.T.,* 128 P.3d 328, 331 (Colo. App. 2005).

B. Analysis

¶ 11 At the adjudicatory jury trial, the Department presented evidence that the youth was vulnerable because of her developmental disabilities. The youth had an individualized

4

learning plan at school for autism and learning disabilities in math, reading, and writing. The youth also received occupational therapy and speech language therapy support. The youth's placement testified that she required specific instruction for basic tasks, including small steps, repetition, and cueing.

¶ 12 In contrast, father testified he believed that the youth had a good understanding of what was dangerous, that she was capable of making decisions on her own behalf, and that he had "no reason to think that [the youth] needs professional help in anything."

¶ 13 The Department presented further evidence that father did not understand or meet the youth's individual needs. The ongoing caseworker expressed concern that father had unrealistic expectations of the youth, including that she would be responsible for maintaining her hygiene and the condition of father's home without support. A representative from the youth's school testified that, while father attended school meetings over the years, his focus during meetings was on his needs rather than the youth's. A family time supervisor testified that, after the youth was removed from father's home, father did not engage with the youth or provide direction to her during supervised family time.

¶ 14    The Department also presented evidence that, while she was in father's care, the youth came to school unkempt, often with feces on her body and wearing clothes and shoes that were too small or not appropriate for the weather.  After attempts to address the youth's hygiene with father did not result in any change, the school instituted a "personal care plan" which allowed them to provide the youth with showers, change her clothing, and comb her hair at school.  Under the plan, the school provided the youth with necessities such as clothing, shoes, hairbrushes, shampoo, conditioner, body wash, and deodorant.

¶ 15    The jury also heard evidence that the youth was exposed to sexual misconduct in father's home.  Father testified he knew the youth and her older brother were "inquisitive and push boundaries" and that he had more than one conversation with them about appropriate behavior.  Additionally, Father said there were several investigations into sexual misconduct between the siblings involving the Department, his church community, and law enforcement.  Father testified that both the youth and her brother disclosed they touched each other inappropriately during those investigations, but because their stories conflicted and because father never saw the

behavior himself, he did not believe that the youth had been victimized. Finally, father told the jury that, while he believed that "touching out of curiosity" was "inappropriate," he viewed those experiences as "educational" and not as harmful to the youth.

¶ 16 Father also testified about the Department's involvement with his other children. The juvenile court then took judicial notice of two prior dependency and neglect cases involving those children, explaining to the jury that father's parental rights were terminated as to two children and that the youth's brother was adjudicated dependent and neglected.

¶ 17 From the above-described evidence, the jury could reasonably infer that the youth was dependent or neglected in father's care under one or more of the statutory criteria presented. *See* § 19-3-102(1)(a)-(e). Accordingly, we will not disturb the jury's verdict.

### C. Prospective Harm

¶ 18 To the extent father contends that prospective harm was not an appropriate basis for adjudication, we decline to address this issue because father did not preserve it. An issue is unpreserved for review when, "among other things, (1) no objection or request was made in the trial court; or (2) an objection or request was made

in the trial court, but on grounds different from those raised on appeal or on unspecific grounds which would not have alerted the trial court to the issue of which the defendant now seeks review." *People v. Ujaama,* 2012 COA 36, ¶ 37 (citations omitted).

¶ 19     Father was given ample opportunity to raise this issue in the juvenile court and failed to do so.  The parties explicitly discussed prospective harm outside the presence of the jury without objection from father.  While father objected to the court taking judicial notice of the adjudications of father's other children and the termination of father's parental rights as to two children, father objected on the ground that evidence of prior cases would be prejudicial, not that the Department should be barred from presenting evidence relevant to prospective harm.  Furthermore, father did not object to jury instructions pertaining to prospective harm, including that the jury was permitted to (1) find that the youth would lack proper care even when father did not have custody at the time of the adjudication; (2) consider the treatment of father's other children; and (3) find, based on father's past conduct, that the youth was likely to be harmed in father's care.

¶ 20     Therefore, this contention is not properly before us.

### III. Disposition

¶ 21　The judgment is affirmed.

JUDGE FOX and JUDGE GOMEZ concur.