24CA0865 Peo in Interest of EQB 02-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0865
Mesa County District Court No. 24JV13
Honorable Valerie J. Robison, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of E.Q.B., a Child,

and Concerning M.T.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE SULLIVAN
Freyre and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 6, 2025

---

Todd M. Starr, County Attorney, Brad Junge, Assistant County Attorney, Grand Junction, Colorado, for Appellee

Josie Burt, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, D.C. (mother) appeals the judgment adjudicating E.Q.B. (the child) dependent or neglected.  We affirm.

## I.     Background

¶ 2     In February 2024, the Mesa County Department of Human Services received a referral that mother was at the emergency room with the then-one-year-old child because mother believed the child had bugs in her stool and thought that meant the child had been sexually assaulted.  But the medical professionals didn't find anything to indicate that the child's stool was irregular or that the child had been sexually assaulted.  And based on mother's conduct, hospital staff was concerned that she was either under the influence of drugs or experiencing psychosis, which rendered her unable to take care of a child.

¶ 3     An assessment caseworker responded to the hospital and met with mother.  The caseworker noticed that mother had dilated pupils, was stuttering and speaking erratically, couldn't stand or sit still, and was easily escalated.  Mother told the caseworker that she

1

had used methamphetamine in the past but refused to answer whether she had used any that day.  Based on her interactions with mother, the caseworker was concerned that mother wasn't sober and couldn't care for the child.  As a result, the Department requested emergency protective custody of the child.  The juvenile court granted the request, and the Department placed the child in foster care.

¶ 4    The Department then filed a petition in dependency and neglect alleging concerns about mother's substance use and mental health.  Mother denied the allegations and requested an adjudicatory jury trial.

¶ 5    After a two-day trial, the jury rendered a verdict finding that (1) the child lacked proper parental care as a result of mother's acts or failures to act; (2) the child's environment was injurious to her welfare; (3) the child was homeless or without proper care through no fault of mother; and (4) the child wasn't living at home with mother through no fault of mother.  Based on the jury's verdict, the

2

court adjudicated the child dependent or neglected. The court later entered a dispositional order adopting a treatment plan for mother.

## II. Evidence of Mother's Compliance with Drug Testing

¶ 6 Mother first contends that the juvenile court erred by allowing several witnesses to testify that she refused to engage in the voluntary drug testing that the Department requested prior to the adjudicatory trial. The Department and guardian ad litem argue that mother failed to preserve this argument for appeal, and we agree.

¶ 7 Mother asserts that she preserved this argument "by raising constitutional issues and fundamental rights during [her] opening statement" at the adjudicatory trial. But mother didn't discuss her pre-adjudication compliance with voluntary drug testing in her opening statement. And, although several witnesses testified that mother refused to provide a urinalysis or hair follicle test in the two months leading up to trial, mother never objected to any of that testimony. She also never argued to the juvenile court that the testimony regarding her refusal to engage in voluntary drug testing

was inadmissible. Accordingly, we decline to address this argument for the first time on appeal. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (unless jurisdiction is implicated, appellate courts generally review only issues presented to and ruled on by the lower court).

## III.   Expert Testimony

¶ 8     Mother next contends that the juvenile court erred when it permitted the permanency caseworker to testify as an expert in child protection. We disagree.

### A.   Applicable Law and Standard of Review

¶ 9     CRE 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

¶ 10     To be admissible under CRE 702, expert testimony must be both reliable and relevant. *Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 28. To determine whether testimony meets these requirements, the court must consider whether: (1) the

4

scientific, technical, or specialized principles underlying the testimony are reasonably reliable; (2) the expert is qualified to opine on the matter; (3) the expert testimony will be helpful to the jury; and (4) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *Id.*

¶ 11　　A court may qualify a witness as an expert under any of the five factors specified in CRE 702. *Gresser v. Banner Health*, 2023 COA 108, ¶ 47. The rule doesn't require a proposed expert to belong to any particular organization or have any specific certification. *People v. Bornman*, 953 P.2d 952, 955 (Colo. App. 1997). When a witness is qualified to provide expert testimony under one or more of the factors in CRE 702 but lacks certain additional knowledge or training within their field of expertise, such deficiency goes to the weight of the expert's testimony, not its admissibility. *See People v. Lehmkuhl*, 117 P.3d 98, 104 (Colo. App. 2004); *see also Core-Mark*, ¶ 28 (the fact that an expert witness can't support their opinion with certainty goes only to the opinion's weight, not its admissibility).

¶ 12    The decision to admit expert testimony lies within the juvenile court's discretion, and we won't disturb it absent an abuse of discretion. *People in Interest of M.W.*, 140 P.3d 231, 233 (Colo. App. 2006). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair. *People in Interest of T.M.S.*, 2019 COA 136, ¶ 43.

### B.    Analysis

¶ 13    Over mother's objection, the juvenile court found that the permanency caseworker was qualified as an expert in child protection based on her background, training, and experience. Although mother argues that the caseworker didn't have the requisite background or knowledge to testify as an expert, the record indicates otherwise. The caseworker testified that she had taken child psychology classes and received two bachelor's degrees, one in psychology and another in communications. She had been a permanency caseworker with the Department for two and a half years. She was certified as a caseworker, which involved approximately 120 hours of initial training and an additional 80

6

hours of ongoing training. And she had been responsible for twenty-five permanency cases during her time with the Department. The caseworker had also testified as an expert in child protection approximately ten other times before the adjudicatory trial.

¶ 14 We acknowledge, as mother points out, that the caseworker didn't have a degree in social work, nor had she published any papers or conducted any research in the field of social work. But the juvenile court found that the caseworker was qualified as an expert in child protection, not social work. And an expert isn't required to have performed a scientific or technical analysis for their testimony to be admissible. *See Core-Mark*, ¶ 34. Moreover, although a degree or experience in social work may have bolstered the caseworker's qualifications to opine about child protection, neither was necessary to qualify her as an expert in child protection. Rather, the lack of these attributes, which were highlighted during counsel's voir dire, went to the weight, not the admissibility, of the caseworker's expert testimony. *See Lehmkuhl*, 117 P.3d at 104.

¶ 15    To the extent mother argues that the juvenile court's failure to make specific findings, in and of itself, constituted error, we conclude that this argument is undeveloped.  True, the court only made specific findings regarding the caseworker's qualifications, while CRE 702 requires additional findings as to (1) the reliability of the underlying scientific principles or specialized knowledge upon which the expert testimony is based; (2) the usefulness of the testimony to the jury; and (3) whether the probative value of the evidence substantially outweighs any unfair prejudice.  *People v. Shreck*, 22 P.3d 68, 79 (Colo. 2001); *see also Ruibal v. People*, 2018 CO 93, ¶ 12 (the admissibility of all expert testimony is governed by CRE 702, and the analysis set forth in *Shreck* applies to testimony based on both specialized knowledge and scientific processes).  However, a court doesn't err by admitting expert testimony without specific findings if (1) "the record not only supports admission of the contested testimony, but virtually requires it"; or (2) "Colorado has already properly accepted the basis of the expert's testimony."  *Kutzly v. People*, 2019 CO 55, ¶ 11.

8

¶ 16    Here, mother doesn't explain whether, in the absence of the specific findings, the record nevertheless "virtually require[d]" admitting the contested testimony or whether Colorado has already deemed the basis of caseworker's testimony reliable.  Thus, because mother failed to develop this argument, we decline to address it.  *See* C.A.R. 28(a)(7)(B); *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004) (declining to address an appellate argument presented without supporting facts, specific argument, or specific supporting authorities).

¶ 17    We also conclude, contrary to mother's argument, that the juvenile court properly admitted the caseworker's testimony about the child's hair follicle results under CRE 703.  We recognize that the court found that the Department's Exhibit 1, which contained the child's hair follicle test results, was inadmissible because the Department failed to lay a proper foundation for admissibility under the hearsay exception for business records.  But under CRE 703, information relied upon by a caseworker qualified as an expert is generally admissible for the limited purpose of explaining the basis

of the caseworker's opinion, as long as the information is of the type reasonably relied upon by experts in the field. *See People in Interest of M.M., Jr.*, 215 P.3d 1237, 1250 (Colo. App. 2009). Here, the caseworker testified that she relied on the child's hair follicle test results to form her opinion that the child was in an unsafe environment and that drug test results are generally relied upon by experts in her field. Moreover, the court gave a limiting instruction to the jury, stating that the jury was only to consider the caseworker's testimony regarding test results as the basis of her expert opinion.

¶ 18    Based on the foregoing, we discern no abuse of discretion in the juvenile court's decision to qualify the permanency caseworker as an expert in child protection and admit her expert testimony.

IV.    Sufficiency of the Evidence

¶ 19    Mother contends that the Department failed to present sufficient evidence for the jury to find the child dependent or neglected. We aren't persuaded.

10

## A. Applicable Law and Standard of Review

¶ 20 The purpose of an adjudicatory jury trial is to determine whether the factual allegations in the dependency and neglect petition are supported by a preponderance of the evidence and whether the status of the subject child or children warrants intrusive protective or corrective state intervention into the familial relationship. *People in Interest of G.E.S.*, 2016 COA 183, ¶ 13. A child may be adjudicated dependent or neglected if the government proves that one or more of the conditions set forth in section 19-3-102, C.R.S. 2024, exists. *People in Interest of S.M-L.*, 2016 COA 173, ¶ 25.

¶ 21 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds. *People in Interest of S.N. v. S.N.*, 2014 CO 64, ¶ 21. In determining whether the evidence is sufficient to sustain the adjudication, we review the record in the light most favorable to the prevailing party, and we draw every inference fairly deducible from the evidence in favor of the jury's

11

decision.  *See People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009).  The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury.  *Id.*  We are bound by a jury's findings, and we will not reverse those findings if the record supports them, even if reasonable people might arrive at different conclusions based on the same facts.  *Id.*; *People in Interest of T.T.*, 128 P.3d 328, 331 (Colo. App. 2005).

## B.   Analysis

¶ 22    As mother acknowledges in her brief, the juvenile court relied on the jury's verdict to adjudicate the child dependent or neglected because (1) the child lacked proper parental care based on mother's acts or omissions, section 19-3-102(1)(b); (2) the child's environment was injurious to her welfare, section 19-3-102(1)(c); and (3) through no fault of mother, the child was homeless, without proper care, or not domiciled with a parent, guardian, or legal custodian, section 19-3-102(1)(e).

¶ 23     Mother argues that the Department's evidence was insufficient to prove that the child lacked proper parental care or was in an injurious environment.  But mother doesn't argue that the Department failed to prove that the child was homeless, without proper care, or not domiciled with mother through no fault of her own.  Thus, because mother doesn't challenge the evidence supporting adjudication under section 19-3-102(1)(e), we can affirm the adjudication judgment regardless of whether the evidence was sufficient to sustain adjudication under sections 19-3-102(1)(b) and (c).  *See S.M-L.,* ¶ 29 ("section 19-3-102 requires proof of only one condition for an adjudication").

¶ 24     But even if we were to consider the merits of mother's sufficiency argument, the evidence was sufficient to support the jury's findings that the child lacked proper parental care based on mother's acts or omissions and that the child's environment was injurious to her welfare.  Specifically, the assessment caseworker testified that when she met with mother at the hospital, mother appeared to be under the influence because her pupils were dilated,

13

she couldn't sit or stand still, her speech and movements were erratic, and she was easily escalated.  Mother also admitted to the assessment caseworker that she had used methamphetamine in the past but refused to answer whether she had used any that day.  At that point, the assessment caseworker didn't believe that mother was sober or that the child would be safe if returned to her, particularly in light of the child's young age and complete dependence on a caregiver to meet her needs.  Thus, the assessment caseworker opined that, at the time of removal, the child lacked proper parental care and would be in an injurious environment if returned to mother.

¶ 25    Moreover, the family time supervisor testified that although family time generally went well, mother had become upset and escalated during at least one incident.  Based on that incident, the family time supervisor was concerned that mother couldn't regulate her emotions around the child, which scared the child and created an unhealthy environment for her.

¶ 26    Last, the permanency caseworker testified that she had continuing concerns about mother's sobriety based, at least in part, on mother's refusal to engage in any sobriety monitoring and her ongoing "erratic behaviors." As a result, the permanency caseworker opined that mother couldn't provide proper parental care for the child. The permanency caseworker also opined that the child would be in an injurious environment if returned to mother based, at least in part, on her opinion that the child had been in an environment in which someone was using methamphetamine.

¶ 27    This evidence, when viewed in the light most favorable to the Department, was sufficient to support the jury's findings that the child lacked proper parental care based on mother's acts or omissions and that the child's environment was injurious to her welfare. Accordingly, we are bound by the jury's findings and discern no basis to reverse the adjudication under sections 19-3-102(1)(b) and (c). *See S.G.L.*, 214 P.3d at 583.

V.    Disposition

¶ 28    We affirm the judgment.

15

JUDGE FREYRE and JUDGE SCHOCK concur.