25CA0047 Peo in Interest of LD 06-05-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0047
City and County of Denver Juvenile Court No. 24JV30682
Honorable Elizabeth McCarthy, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of L.D., a Child,

and Concerning M.D.,

Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 5, 2025

---

Katie McLoughlin, Acting City Attorney, Amy J. Packer, Assistant City Attorney, Christina R. Kinsella, Assistant City Attorney, Denver, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Beth Padilla, Office or Respondent Parents' Counsel, Durango, Colorado, for Appellant

¶ 1        M.D. (father) appeals (1) the judgment adjudicating L.D. (the child) dependent or neglected and (2) the juvenile court's initial dispositional order. We affirm.

## I. Background

¶ 2        In July 2024, the Denver Department of Human Services received a report that mother and father were involved in a domestic dispute in which father hit mother and bit the child on her arm. When mother met with a caseworker, she denied the allegations, claiming that a three-year-old relative had bitten the child. Following a medical examination, a doctor specializing in child abuse determined that the child had been bitten by an adult, not another child.

¶ 3        Based on this information, the Department filed a petition in dependency or neglect. Father denied the allegations and requested a trial. Following a bench trial, the juvenile court adjudicated the child dependent or neglected under section 19-3-102(1)(a)-(c), C.R.S. 2024. The court then held a contested dispositional hearing and adopted a treatment plan for father that required, among other things, that he address domestic violence (DV) in the home.

## II. Scope of Expert Testimony

¶ 4     Father asserts that the juvenile court abused its discretion by allowing the caseworker and a doctor to testify beyond the scope of their expertise. We perceive no abuse of discretion.

¶ 5     Once a witness is qualified as an expert, "the witness's expert opinion testimony must still be limited to the scope of his or her expertise." *People v. McFee*, 2016 COA 97, ¶ 88. "Whether opinion testimony is within a particular witness's expertise generally is a matter addressed to the sound discretion of the court." *People v. Watson*, 53 P.3d 707, 711 (Colo. App. 2001). A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding of the law. *People in Interest of M.W.*, 2022 COA 72, ¶ 32.

¶ 6     To begin, we decline to address father's assertion that the juvenile court allowed the caseworker to testify outside the scope of her expertise. Father hasn't directed us to any place in the record where he objected to the caseworker's testimony on that basis. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14 (noting that appellate courts don't consider issues that weren't raised or ruled on in the juvenile court); *see also People v. Tallent*, 2021 CO 68, ¶ 11 ("[A]n

appellate court has an independent, affirmative duty to determine whether a claim is preserved . . . , regardless of the positions taken by the parties."). While our own independent review reveals that father's counsel objected to one question regarding domestic violence as outside the scope of the caseworker's expertise, the court sustained the objection by preventing the caseworker from giving "an opinion on domestic violence as an expert." Father's counsel didn't request further relief. Under these circumstances, we decline to consider father's contention that the court erred by allowing the caseworker to testify outside the scope of her expertise. *See Settle v. Basinger*, 2013 COA 18, ¶ 102.

¶ 7     Next, father asserts that the juvenile court abused its discretion by allowing the doctor to testify about the bite marks on the child's arm, arguing that she wasn't an expert in dentistry or odontology. We disagree because the record shows that the doctor didn't testify about matters outside her area of expertise. *See Gonzales v. Windlan*, 2014 COA 176, ¶ 25 (concluding that "the fact that [the doctor] was qualified as an expert in family medicine rather than radiology did not preclude him from testifying about MRI reports"). For example, father objected to the county attorney's

question about how much force it would take to "break the skin." The doctor's answer — "the type of activity or the type of force required to cause this type of injury would not be an activity that would be mistaken for play or an accidental injury" — was based on the doctor's experience as a child abuse pediatrician and didn't require expertise in dentistry or odontology. Likewise, the doctor didn't need to be an expert in dentistry or odontology to testify that the bite mark was likely made by an adult because "adult mouths are consistently larger than children's mouths."

### III. Sufficiency of the Evidence

¶ 8 Father contends that the juvenile court erred by adjudicating the child dependent or neglected because no evidence showed that father bit the child to coerce and control mother. We disagree.

¶ 9 "Whether a child is dependent [or] neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds." *People in Interest of M.M.*, 2017 COA 144, ¶ 17. To establish that a child is dependent or neglected, a department must prove the allegations in the petition by a preponderance of the evidence. *See* § 19-3-505(1), (7)(a), C.R.S. 2024; *People in Interest of S.G.L.*, 214 P.3d 580, 583

4

(Colo. App. 2009).  As relevant here, a child is dependent or neglected if (1) a parent has subjected a child to mistreatment or abuse or allowed another to mistreat or abuse the child without taking means to stop it; (2) the child "lacks proper parental care through the actions or omissions" of a parent; or (3) the child's "environment is injurious to his or her welfare." § 19-3-102(1)(a)-(c).

¶ 10    When determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in support of the juvenile court's determination.  *S.G.L.*, 214 P.3d at 583.  We won't disturb the court's judgment if the evidence supports it, even though reasonable people might reach different conclusions based on the same facts.  *Id.*

¶ 11    The evidence presented at the adjudicatory hearing established that the family had gone to a party at paternal grandmother's home.  At the party, mother and father got into an argument, causing mother to leave with the child.  When father returned home, mother and the child had gone to maternal

grandmother's home. Father claimed that he didn't know until several days later that the child had been bitten; he was told that one of his nephews had bitten her. Based on its investigation, the Department believed that father had bitten the child at the party, prompting mother's hasty departure from the party and the couple's residence. However, the Department didn't call mother or any of the family members to testify.

¶ 12 The doctor examined the child a few days after the party. She testified that the child's injury was consistent with a bite, and as noted above she didn't believe that the injury could have been caused by a three-year-old due to the bite mark's size. The doctor "made a diagnosis of child physical abuse" because the injury was "deliberately inflicted" by an adult. She conceded, however, that she couldn't determine who specifically had bitten the child.

¶ 13 Based on this evidence, the juvenile court determined that the child was dependent or neglected under section 19-3-102(1)(a)-(c). In doing so, the court rejected father's theory that the child was bitten by a three-year-old and agreed with the doctor that the child was more likely bitten by an adult. But the court stopped short of finding that father had bitten the child, noting that, even if another

adult had bitten her, it could still find her dependent or neglected under subsections (a)-(c).  For example, the court found that the evidence supported a conclusion that father had allowed another to mistreat or abuse the child, the child lacked proper parental care based on father's omissions, and the child's environment was injurious to her welfare, "given the serious bite mark that occurred."  *See M.M.*, ¶ 25 (noting that the injurious environment provision doesn't require a finding that the parent caused the injurious environment).

¶ 14    After viewing the evidence described above in the light most favorable to the Department and drawing every inference fairly deducible from the evidence in favor of the juvenile court's determination, we conclude that the evidence was sufficient to support an adjudication under section 19-3-102(1)(a)-(c).  *See S.G.L.*, 214 P.3d at 583; *see also People in Interest of B.W.*, 626 P.2d 742, 743 (Colo. App. 1981) (When a court's decision "is based on conflicting evidence," the court doesn't err.).

¶ 15    Father also asserts that the adjudication should be reversed because no evidence showed that he had bitten the child "as an act of 'coercion and control' over mother."  But nothing in the language

of section 19-3-102(1)(a)-(c) required the juvenile court to make a finding that father had bitten the child as an act of coercion and control. And in any event, the court didn't find that the child was dependent or neglected on that basis. Rather, the court's findings, as described above, comport with the statutory criteria in section 19-3-102(1)(a)-(c), and the evidence supported those findings. We therefore discern no error in the court's adjudication judgment.

## IV. Treatment Plan

¶ 16    Father contends that the juvenile court erred by adopting a treatment plan that required him to participate in a DV evaluation and treatment. We aren't persuaded.

¶ 17    The juvenile court has discretion to formulate an appropriate treatment plan for a parent. *People in Interest of C.L.S.*, 934 P.2d 851, 855 (Colo. App. 1996). "In determining whether a treatment plan is appropriate, the court must consider whether the plan's objectives adequately address the safety concerns identified during the assessment of the family." *People in Interest of K.B.*, 2016 COA 21, ¶ 14. And because the purpose of a treatment plan is to address the barriers to reunifying families, it may include issues that weren't the basis for the adjudication judgment. *M.W.*, ¶ 43.

Generally, a court may require treatment "when it is warranted by the record before the court." *People in Interest of L.M.*, 2018 COA 57M, ¶ 51.

¶ 18   After hearing the evidence at the dispositional hearing, the juvenile court adopted the proposed DV component, which required, among other things, that father "complete a domestic violence evaluation" and "domestic violence treatment." The court found that the evidence presented at the adjudicatory hearing established that the parents had a "conflict" and father had bitten the child. The court also determined that the "injury proven at the [c]ourt trial was an act of domestic violence" perpetrated by father. Ultimately, the court concluded that the DV component was "essential" to "address the power and control dynamics in this case."

¶ 19   Because the record supports the juvenile court's decision to impose a DV component, we reject father's assertion. *See id.* As noted, the evidence presented at the adjudicatory hearing established that the parents had a dispute that resulted in the child being bitten. The caseworker testified, for example, that the Department had received a report that the parents had been

involved in a DV incident that became physical and resulted in father biting the child. Although the court didn't make a finding at the adjudicatory hearing that father had bitten the child, we aren't aware of any authority that prevented the court from making that finding at the dispositional hearing.

¶ 20 The caseworker also testified at the dispositional hearing about her experience with DV in previous dependency or neglect cases and noted the similarities between those cases and the current case, which involved, for example, isolation of mother from her family.

¶ 21 We reject father's other assertions as follows:

- Father's reliance on *People in Interest of E.S.*, 2021 COA 79, is misplaced because that case doesn't require that the other parent report DV for a juvenile court to include a DV component in the treatment plan. Rather, *E.S.* concludes that a court can impose a DV component if the record supports it. *See id.* at ¶ 36.

- Nor does *L.M.* help father. In that case, a division of this court determined that the juvenile court couldn't impose a sex offense evaluation and treatment where father was

acquitted in a criminal case involving an alleged sexual offense and continued to deny the allegations. *See L.M.*, ¶ 52. *L.M.* is distinguishable because father wasn't charged with a crime, but the juvenile court found, with record support, that he had committed DV. *See id.* at ¶ 51 ("[A] juvenile court may require such treatment when it is warranted by the record before the court.").

- Contrary to father's argument, the treatment plan didn't require him to engage in Domestic Violence Offender Management Board (DVOMB) treatment. *See* § 16-11.8-103, C.R.S. 2024 (creating the DVOMB). Therefore, father's argument that he can't be required to engage in DVOMB treatment necessarily fails.

## V. Disposition

We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.