25CA0073 Peo in Interest of SM 08-07-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0073
Weld County District Court No. 24JV7
Honorable W. Troy Hause, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of S.M., a Child,

and Concerning J.M.,

Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE JOHNSON
Welling and Grove, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 7, 2025

---

Bruce T. Barker, County Attorney, David S. Anderson, Assistant County Attorney, Greeley, Colorado, for Appellee

Jenna L. Mazzucca, Guardian Ad Litem

Robin Tieman, Office of Respondent Parents' Counsel, Boulder, Colorado, for Appellant

¶ 1     In this dependency and neglect proceeding, J.M. (father) appeals the judgment adjudicating S.M. (the child) dependent or neglected.  We affirm.

## I.     Background

¶ 2     The Weld County Department of Human Services (the Department) received a referral with concerns that R.M. (mother) tested positive for methamphetamine at the time she gave birth to the child.  The Department and the parents entered into an agreement for a safety plan.  The safety plan required the parents to complete monitored sobriety, to live with the child's great-grandmother, and to abstain from transporting the child.  But the safety plan "disintegrated" within three weeks, largely due to the parents' continued substance use.

¶ 3     The Department then filed a petition in dependency or neglect, and the court removed the child from great-grandmother's home and placed her with her great-aunt and great-uncle.  Father denied the allegations in the petition and requested an adjudicatory jury trial.

¶ 4     Following the trial, the jury found that the child was dependent or neglected under section 19-3-102(1)(b), (c), and (e),

1

C.R.S. 2024. Based on those findings, the court entered an adjudication.

## II. Sufficiency of the Evidence

¶ 5 Father contends the evidence was insufficient to support the jury's verdicts. We disagree.

### A. Standard of Review and Applicable Law

¶ 6 Whether a child is dependent or neglected presents a mixed question of fact and law because it requires application of evidentiary facts to the statutory grounds. *People in Interest of M.M.*, 2017 COA 144, ¶ 17. When determining whether the evidence is sufficient to sustain an adjudication, we review the evidence in the light most favorable to the prevailing party and draw every inference fairly deducible from the evidence in favor of the jury's verdicts. *People in Interest of S.G.L.*, 214 P.3d 580, 583 (Colo. App. 2009). The credibility of the witnesses and the sufficiency, probative effect, and weight of the evidence, as well as the inferences and conclusions to be drawn therefrom, are within the purview of the jury. *See id.* We will not disturb the jury's verdicts if the evidence supports them, even though reasonable people might arrive at different conclusions based on the same evidence. *See id.*

¶ 7     To establish that a child is dependent or neglected, a department must prove the allegations in the petition by a preponderance of the evidence.  *See* § 19-3-505(1), (7)(a), C.R.S. 2024.  As relevant here, a child is dependent or neglected if (1) the child lacks proper parental care through the actions or omissions of a parent; (2) the child's environment is injurious to her welfare; or (3) through no fault of the parent, the child is homeless, without proper care, or not domiciled with a parent.  § 19-3-102(1)(b)-(c), (e). Proper parental care means the minimum level of care or services and necessities that are required to prevent any serious threat to the child's health or welfare.  *People in Interest of S.X.M.*, 271 P.3d 1124, 1131-32 (Colo. App. 2011) (approving jury instruction containing this language); *see* CJI-Civ. 41:7 (2024).  An injurious environment is a situation that is "likely harmful" to the child. *People in Interest of J.G.*, 2016 CO 39, ¶ 26.

¶ 8     An adjudication must be based on existing circumstances and relate to the child's status at the time of adjudication.  *People in Interest of A.E.L.*, 181 P.3d 1186, 1192 (Colo. App. 2008).  But that does not mean a juvenile court must find that the child is receiving improper care at the time of the hearing.  *See S.X.M.*, 271 P.3d at

1130.  Rather, an adjudication may be based on past, current, or prospective harm.  *See People in Interest of G.E.S.*, 2016 COA 183, ¶ 15.  To determine whether a child is dependent or neglected based on prospective harm, a court may consider whether it is likely or expected that a child will be dependent or neglected if returned to the parent.  *See People in Interest of S.N.*, 2014 COA 116, ¶¶ 15-16.

## B.    Analysis

¶ 9    Viewing the evidence in the light most favorable to the prevailing party and drawing every fairly deducible inference in favor of the jury's decision, we conclude the evidence was sufficient to support its determination that the child was dependent or neglected with respect to father under subsections (1)(b) (lack of proper parental care) and (1)(c) (injurious environment).  The Department's evidence supporting this determination largely concerned the parents' substance use.

¶ 10    The record shows that both father and mother continued to use methamphetamine at the time of the hearing.  Father, who had used methamphetamine for twenty years, admitted his use was ongoing and identified himself as a "functioning meth addict."

Father also testified that he wanted the child returned to his care first and then to get sober thereafter. *See S.N.*, ¶¶ 17-18 (concluding that a prospective harm determination may be based on a parent's past conduct, including drug use, and current circumstances).

¶ 11 The permanency caseworker outlined her concerns if the child were returned to the parents' care — namely, the possibility that (1) the child would be exposed to methamphetamine through smoke residue on surfaces and (2) the parents would be unable to read the child's cues because of their substance use. The permanency caseworker testified she had observed the parents not reading the child's cues during visits, which she believed to be related to their substance use. Relatedly, the intake caseworker testified that great-grandmother reported that she could not tell when the parents were under the influence.

¶ 12 In addition, father admitted that he would have to get rid of a few of the animals in his home before it was safe for the child to live there.

¶ 13 Still, father contends that the evidence of injurious environment was insufficient because the Department presented no

evidence that great-grandmother's home, "the only place the couple planned to live with the child," was injurious to her welfare. In support, father points to his testimony that he and mother "originally wanted to go stay with [great-grandmother] to begin with." But the jury as the fact finder, *see S.G.L.*, 214 P.3d at 583, was not required to credit this testimony or conclude, as father posits, that father and the child would only ever live with great-grandmother regardless of Departmental involvement. Regardless, the evidence the jury may have considered with respect to prospective harm was not limited to that concerning great-grandmother's home. *See also People in Interest of C.M.*, 2024 COA 90, ¶ 29 (stating that when a child has been removed from the parents, the relevant inquiry is whether her environment would be injurious if "returned to *the parents*") (emphasis added). Among other evidence supporting a finding of injurious environment, father tested positive for methamphetamine four times while living with the child at great-grandmother's home.

¶ 14     Nor are we persuaded by father's claim that there was insufficient evidence to support a finding of lack of proper parental care because he complied with the safety plan. The record appears

to indicate that father did not comply with the safety plan because, among other things, he used methamphetamine during the time the safety plan was in effect. Nonetheless, father's compliance with the safety plan is not dispositive of whether it is likely or expected that the child would lack proper parental care if returned to his care. *See K.D. v. People*, 139 P.3d 695, 699 (Colo. 2006) (stating that, in an adjudicatory hearing, the court determines whether the child lacks "the benefit of parental guidance, concern, protection or support to which he is entitled") (citation omitted).

¶ 15 Accordingly, we conclude that the evidence was sufficient to support the jury's verdicts pursuant to subsections (1)(b) and (1)(c). Based on this conclusion, we need not consider whether the evidence was sufficient to support the jury's verdict under subsection (1)(e). *See People in Interest of S.M-L.*, 2016 COA 173, ¶ 29 ("[S]ection 19-3-102 requires proof of only one condition for an adjudication."), *aff'd on other grounds sub nom. People in Interest of R.S. v. G.S.*, 2018 CO 31.

## III. Conclusion

¶ 16 We affirm the judgment.

JUDGE WELLING and JUDGE GROVE concur.